[No. 22599.   Department Two.   March 4, 1931.]

PRICIA DOUCETTE, *Appellant,* v. OLD NATIONAL BANK & UNION TRUST COMPANY, *Respondent.*[1]

*W. B. Mitchell,* for appellant.

*Wakefield & Witherspoon* and *Garrecht & Twohy,* for respondent.

MILLARD, J.—Plaintiff's separate funds, which should have been credited to the joint account of the plaintiff and her husband with the defendant bank, were placed

[1]Reported in 296 Pac. 570.

in the husband's individual account with that bank. On two causes of action, the plaintiff sought to recover from the defendant bank for the loss she claimed she sustained by her husband's withdrawal of those funds from his individual account.

For her first cause of action plaintiff alleged that the defendant acquiesced in the fraud of the husband in placing the funds in the husband's individual account; that the bank thereby treated that account as the joint account of the husband and wife, and that no funds could be legally withdrawn therefrom without the joint order of the husband and wife. The theory of her second cause of action is that the money is still in the individual account of her now divorced husband, and that she has established her right thereto as against that divorced husband. At the close of plaintiff's case the defendant's motion for nonsuit was granted, and judgment of dismissal was entered. From that judgment, the plaintiff has appealed.

On May 31, 1927, appellant was a widow. She owned a real estate mortgage of five hundred dollars, and was possessed of $2,120 she had received from her deceased husband's life insurance. On that date, she married Edward Duncan Tamas. Some time in September, 1927, the mortgage was entrusted to the respondent for collection. Mr. Tamas took the note to the respondent bank, but, as same had not been indorsed, it was necessary that he return it to his wife for her indorsement. Appellant indorsed it as "Pricia Doucette," and as "Mrs. E. D. Tamas," thereupon her husband returned it to the collection department of the respondent. Later, the appellant and her husband called at the bank of respondent, and the former signed, by her former name of Pricia Doucette and her then present name of Mrs. E. D. Tamas, an authorization for the respondent to accept $485 in full

payment of the note. On that written authorization, appears the advice that the collection be credited to "Mr. and Mrs. E. D. Tamas."

On October 15, 1927, the respondent effected collection of the note. A duplicate deposit slip, indicating that the collection was credited to the account of appellant and her husband, was mailed, one of respondent's employees testified, to Pricia Doucette or to Mrs. E. D. Tamas. That deposit slip reads as follows:

"The Old National Bank of Spokane, Washington. Collection Department. 10-15-1927. Mail to Mr. and Mrs. E. D. Tamas, Washington & 2nd. Your account has been credited with item described below: Number 31509. Jacob Brumbach $485. Collection $.60. $484.40."

On October 17, 1927, that duplicate deposit slip and a check for $2,120, payable to Mrs. E. D. Tamas, were given by appellant to her husband, so she testified, to take to the respondent bank to be therein deposited to the credit of the account of "Mr. and Mrs. E. D. Tamas." Mr. Tamas presented to respondent's teller his pass book, the duplicate deposit slip showing a credit of $484.40 to the account of "Mr. and Mrs. E. D. Tamas," and the check for $2,120. The individual account of "E. D. Tamas" was credited with both items, and in the pass book of "E. D. Tamas" both items were credited. The check for $2,120 was drawn by the Willow Lakes Auto Company, and made payable to the order of "Mrs. E. D. Tamas." The check is indorsed in blank, the indorsement reading, "Mrs. E. D. Tamas." Underneath that indorsement is the indorsement of "Mr. E. D. Tamas, Martin Hotel." Tamas made a deposit slip covering the item of $2,120, the deposit slip showing that the check was deposited to the credit of "E. D. Tamas." At the same time, Tamas made a deposit to his account of $100.22, which, ap-

pellant testified, "That was the proceeds of the hotel where he was working, the Martin Hotel."

No joint account of appellant and her husband was ever opened with respondent. There is no evidence that the appellant, either prior or subsequent to her marriage to E. D. Tamas, had an account with the respondent.

The account of appellant's husband with respondent was an individual account in the name of "E. D. Tamas," and was opened August 17, 1926. The last deposit to his credit was made April 3, 1928. Numerous deposits were made by Tamas, and many checks were drawn by him against his account, the balance to his credit April 4, 1928, being $176.79. Tamas and his wife were operating a hotel, the proceeds from which were deposited every few days by Tamas. He drew the checks on his individual account in payment of the bills of the hotel. Appellant knew that her husband had an account with respondent. She knew that he was almost daily depositing money in the respondent bank. Appellant also knew that her husband was drawing checks with which to pay the hotel's obligations. She never asked for or received a pass book. She never requested or demanded that she be given an opportunity to draw or sign any checks.

On or about April 3, 1928, the appellant obtained respondent's statement of its account with appellant's husband. She then learned, for the first time, that her separate funds in the amount of $2,604.40 had been placed to the credit of E. D. Tamas, and by him expended; that the then balance to the credit of E. D. Tamas was less than two hundred dollars. On April 12, 1928, the appellant demanded of the respondent the return to her of her separate funds, giving written notice to the respondent that it had been negligent in not opening a joint account in the name of her hus-

band and herself, as the respondent had been directed to do. Appellant obtained a divorce from her husband and instituted this action, the trial of which resulted in a nonsuit.

Appellant directed that the proceeds ($484.40) from the mortgage collected by her through respondent bank, be credited to the account of Mr. and Mrs. E. D. Tamas. No such account theretofore existed in the bank, and, by mistake, the collection was credited to the personal account of E. D. Tamas, an account of long standing in the respondent bank. No new account in the name of appellant and her husband was ever opened. In another action, appellant succeeded in recovering that amount from the respondent.

The present action is for the recovery of $2,120, the amount of the draft deposited by Tamas to his personal account. Recovery is sought on two theories: First, that the respondent is liable, because it knowingly participated in the diversion of the money; and second, on the theory that a portion of the money is still in the bank and can be traced and followed by its true owner.

Appellant contends that, where funds are deposited in a bank to the joint account of a husband and wife, the bank cannot, without special authority, pay them out on checks signed by one spouse alone. *Gish Banking Co. v. Leachman's Adm'r,* 163 Ky. 720, 174 S. W. 492. That rule, however, is not applicable to the facts in the case at bar.

The check in controversy was indorsed by the appellant payee in blank. So indorsed, a check passes by delivery as fully and freely as a bank note.

"An indorsement in blank, which is the simplest and most common form of indorsement, is one which does not mention the person in whose favor it is made, and consists generally simply of the name of the indorser

written on the back of the instrument. . . . an indorsement in which no indorsee is named is a blank indorsement, although it contains a guaranty of payment.'' 8 C. J., p. 357, § 536.

Appellant indorsed the check in blank—she simply wrote her name on the back of the check, and did not mention the person in whose favor it was made—thus clothing her husband with the full indicia of ownership. The bank had no notice, nor was it put upon notice, that the check was to be deposited to a joint account. Had she placed a restrictive indorsement upon the check, her rights would have been fully protected. On the day Tamas deposited this check, he also deposited to his personal account $100.22, the proceeds from the hotel he and his wife were operating. Appellant knew that her husband had a personal checking account, and that he was frequently drawing on some account in respondent bank.

Though appellant made, or her husband made, one deposit for her to their joint account, it does not follow that the bank would, thereafter, be charged with notice that each and every check indorsed in blank presented by the appellant's husband, should be placed to the credit of the joint account. There is no more reason for such presumption than that the bank would be presumed to know that, whenever the appellant's husband deposited cash, same should be placed to the credit of the joint account. The fact that appellant indorsed in blank the second item, the check for $2,120, after instructing respondent to place the first item of $484.40 in a joint account, is presumptive proof that she did not intend the check to be placed in the joint account. Having indorsed the check in blank, the bank was not placed upon notice that same was to be placed to the credit of the joint account.

If a bank pays a check, indorsed in blank, upon pre-

sentment, to the holder thereof, having at the time no reasonable cause for suspecting any irregularity or any cause for refusing such payment, the bank will be protected in doing so, no matter what facts unknown to it may have occurred prior to the presentment. Section 393, Morse on Banks and Banking (6th ed.).

[redacted] Also, the rule (so uniformly followed as to need no citation of sustaining authority) that, where one of two innocent persons must suffer, the loss must fall on the one who put it in the power of the third person to cause the loss, is applicable to the facts in the case at bar, and precludes recovery by appellant from the respondent.

[redacted] In her second cause of action appellant alleged that approximately twenty-one hundred dollars of the money originally belonging to her was still in the bank, and sought to follow it, as being the true owner. Appellant introduced in evidence the ledger sheets of the bank, attempting to limit the offer of proof up to March 1st, 1928, when the balance in the account was nearly thirty-two hundred dollars. On April 12, 1928, appellant notified the respondent in writing that she claimed this fund. The trial court refused to allow the ledger sheets to be limited to March 1st. They comprise all the evidence of what was in the fund at the time appellant's rights attached, and as to the balance then remaining in the account. The actual balance shown by respondent's books, on April 4th, was $176.79. There is no dispute about this portion of the fund, which was subsequently reached by the appellant in her divorce proceedings.

Appellant seeks to impress a trust upon a fund. She can not limit her proof to March 1st. The ledger sheets showing all deposits to the credit of the account, and all withdrawals from the fund from the date the account was opened to the time the respondent had notice

of appellant's claim on the fund, should be admitted. Appellant failed to prove any depletion of the fund after the bank had notice of her claim.

Our examination of the entire record discloses no reversible error, therefore the judgment is affirmed.

MITCHELL, MAIN, BEALS, and FULLERTON, JJ., concur.