[No. 34455.   Department Two.   May 8, 1958.]

KETNER BROS., INC., *Respondent*, v. MAURICE NICHOLS *et al.*,
*Appellants*, JACK PICKHAM *et al.*, *Defendants.*[1]

[1]Reported in 324 P. (2d) 1093.

*Vernon W. Towne* and *James P. Healy*, for appellants.

*Metzger, Blair & Gardner*, for respondent.

ROSELLINI, J.—This action was brought to foreclose a labor and materialman's lien against real estate in Pierce county, Washington. It is before this court upon the findings of fact, no error having been assigned thereto. The findings, in so far as material to this appeal, set forth the following facts:

On July 11, 1954, the defendants Maurice Nichols and Grace Nichols were the owners of certain real property in Pierce county, which they were selling under contract to the defendants Jack Pickham and Ruth Pickham. At this time, the defendants Pickham contracted with the plaintiff to repair certain damage which had resulted from a fire on the premises. Labor and materials were furnished, to and including February 10, 1955, of the reasonable value of $5,016.

On August 16, 1954, the defendant Maurice Nichols and the defendants Pickham executed a proof of loss, based upon an estimate furnished by the plaintiff, which was sub-

mitted to the insurer for the defendants Pickham. Sometime in August of the same year, the insurer presented its draft in payment of its obligation to the defendants, in the amount of the plaintiff's estimate. This draft was endorsed by the defendant Maurice Nichols, without recourse, and turned over to the other defendants. At the time he endorsed the check, Maurice Nichols knew that work was being performed and materials were being furnished in connection with the repair of the fire damage and that the draft was "for the purpose of paying a contractor for the repairs to the premises. . . ."

A notice of claim for labor and materials was duly filed, within the time required by statute. Subsequently, the plaintiff was paid $1,150 by the defendants Pickham, leaving a balance due of $3,866, plus interest.

On November 12, 1955, the defendants Pickham quitclaimed their interest in the property to the defendants Nichols. The express finding of the court on this matter is as follows:

"That said conveyance was not intended by way of forfeiture of the real estate contract between Defendants Nichols and Pickham. That the said deed and conveyance was made, executed and delivered by Defendants Pickham to Defendants Nichols because of the failure on the part of Defendants Pickham to make payment of the balance due to Ketner Bros., Inc., for the work performed and the materials furnished on the hereinabove described real property."

Upon these findings, the court concluded that the lien should be foreclosed against the Pickhams' interest in the real estate but not against the Nichols' interest, since there was no contract between the Nichols and the plaintiff,[2] and that personal judgment should be entered against the Pickhams and against the Nichols (who alone have appealed and are hereafter referred to as the defendants) for the unpaid balance of the plaintiff's claim. The defendants con-

---

[2] Generally speaking, material furnished and work done, upon order of the vendee under a contract of purchase, will not support a lien on the property as against the interest of the vendor. *Newell v. Vervaeke*, 189 Wash. 144, 63 P. (2d) 488.

tend that the conclusions and judgment are not supported by the findings with the exception that the Pickhams were personally indebted to the plaintiff.

It is first urged that the court erred in entering a personal judgment against the defendants, since no contract was found to exist between them and the plaintiff. The memorandum opinion reveals that the court's conclusion was based upon an application of the equitable maxim that, where one of two equally innocent persons must suffer, that one whose act or neglect made the fraudulent act possible must bear the loss occasioned thereby. This maxim is applied where two parties make claim to the same property, the conflict in claims having arisen as a result of the fraud of a third party. A few examples from this jurisdiction are *Hutson v. Walker*, 37 Wn. (2d) 12, 221 P. (2d) 506; *Dahl v. Stromberg*, 31 Wn. (2d) 884, 200 P. (2d) 495; *Beckmann v. Ward*, 174 Wash. 326, 24 P. (2d) 1091; *Koppler v. Bugge*, 168 Wash. 182, 11 P. (2d) 236; *Zoratti v. West Coast Finance Co.*, 162 Wash. 97, 297 Pac. 1078; *Doucette v. Old Nat. Bank & Union Trust Co.*, 161 Wash. 159, 296 Pac. 570; *Bank of California v. Danamiller*, 125 Wash. 255, 215 Pac. 321, 36 A. L. R. 753; and *Hanson v. Carr*, 66 Wash. 81, 118 Pac. 927.

The conclusion of the trial court was based upon the finding that, when the defendant Maurice Nichols endorsed the check without recourse, he put it in the power of the vendees, who were copayees, to use the proceeds for some purpose other than the payment of their debt for labor and materials supplied by the plaintiff. While this no doubt is the fact, we do not think that the maxim justifies the imposition of liability on the defendants as a result of it.

In the first place, we are not here concerned with two conflicting claims. The defendants assert no interest in the insurance proceeds. It is conceded that the responsibility for damage to the property by fire rested solely upon the vendees. This being the case, the only interest which the defendants could have in the proceeds of the policy would be as security for the payment of the purchase price.

*Geranios v. Annex Investments*, 45 Wn. (2d) 233, 273 P. (2d) 793.

█ Furthermore, there is nothing in the findings to indicate that the plaintiff had any legal right to the proceeds of the policy. In the absence of some showing that the plaintiff had a right, by contract or otherwise, to be paid out of this specific fund, it must be assumed that the proceeds properly belonged to the vendees, to whom the check was payable, if the defendants claimed no interest. As we said in *Nelson v. Nelson Neal Lbr. Co.*, 171 Wash. 55, 17 P. (2d) 626, 92 A. L. R. 554, it is elementary that a fire insurance policy is a purely personal contract, and that payment by the insurer to the insured named in the policy is compulsory.

█ Considering this fact, there is a third reason why the doctrine is inapplicable. The defendants had no authority to interfere with the payment of the proceeds to the insured, much less a duty to do so.

█ Nor do the findings support an inference that the proceeds were lost through the fraud of the vendees. Misrepresentations and reliance thereon are essential elements of fraud. *Dragos v. Plese,* 39 Wn. (2d) 521, 236 P. (2d) 1037. The findings are devoid of these elements.

Significantly also, the findings do not disclose that unless the plaintiff recovers personal judgment against the defendants, they will suffer a loss. They have already been partially paid, and they have their judgment against the vendees, with whom they contracted.

In addition, they have their lien against the vendee's interest in the real property. It is true that the lien is worthless if a sale of the property will not bring more than the amount of the vendor's interest, but this is a hazard which existed when the contract was undertaken.

Since it is evident that, for the reasons just enumerated, the maxim does not apply in this instance, we need not decide whether, upon the findings, the court was justified in concluding that it was the neglect of the defendants, rather than that of the plaintiff, which made the plaintiff's loss, if any, possible.

■ It is also urged that the lien of the plaintiff should have been declared lost by reason of the forfeiture of the real-estate contract. The plaintiff relies, in this contention, upon *Newell v. Vervaeke, supra*; *Pitcher v. Ravven*, 137 Wash. 343, 242 Pac. 375; and *Northwest Bridge Co. v. Tacoma Shipbuilding Co.*, 36 Wash. 333, 78 Pac. 996. While the rule of those cases is applicable where there has been a genuine forfeiture, brought about by the default of the vendees, it has no application in a case such as this. Here the court found that, although a quitclaim deed was executed, no forfeiture was intended. While the findings are not clear as to the reason why the conveyance was made, it can be fairly inferred that it was made to defeat the lien of the plaintiff, since it was made

" . . . because of the failure on the part of defendants Pickham (the vendees) to make payment of the balance due to Ketner Bros., Inc., (the plaintiff) for the work performed and the materials furnished on the hereinabove described real property."

The only other inference which can be drawn from this finding is that the conveyance was made with the understanding that the property was subject to the lien. In either event, equity will regard that as done which ought to be done, and justice requires that the lien be preserved to the extent of the vendee's interest. See *Boyd v. Blake*, 42 Minn. 1, 43 N. W. 485 (1889).

The judgment rendered against the defendants personally is reversed. In all other respects, the judgment is affirmed.

The parties shall bear their own costs on appeal.

HILL, C. J., DONWORTH, FINLEY, and FOSTER, JJ., concur.