[No. 15042-5-II.    Division Two.    February 24, 1994.]

MICHAEL HEINRICH, *Respondent*, v. TITUS-WILL SALES, INC., ET AL, *Appellants*.

---

148

*Wayne B. Knight* and *Stouffer & Knight,* for appellants.

*Charles Frederic Diesen* and *Diesen, Wittman & Graves,* for respondent.

SEINFELD, J. — Titus-Will Ford Sales, Inc.,[1] appeals a judgment for replevin of a 1990 Ford pickup truck that Titus-Will had previously sold to dealer/broker James Wilson. Upon consideration of the entrustment and voidable title provisions of the Uniform Commercial Code, we agree that Titus-Will must bear the burden of loss of payment for

---

[1] This is the correct name of the appellant. The caption is apparently incorrect. We will refer to the appellant as "Titus-Will".

the vehicle. Accordingly, we affirm the judgment in favor of Michael Heinrich, a third party bona fide purchaser for value.

In 1989 Michael Heinrich wished to buy a particular model new Ford pickup truck. James Wilson held himself out as a dealer/broker, licensed to buy and sell vehicles. Heinrich retained Wilson to make the purchase, but did not direct Wilson to any particular automobile dealer. Unbeknownst to Heinrich, Wilson had lost his Washington vehicle dealer license the previous year.

Wilson negotiated with Titus-Will for the purchase of a Ford pickup truck with Heinrich's desired options. Titus-Will had been involved in hundreds of transactions with Wilson over the years and also was unaware that Wilson was no longer licensed to act as a vehicle dealer.

Heinrich made two initial payments to Wilson: an $1,800 down payment and a $3,000 payment when Titus-Will ordered the truck. Wilson gave Heinrich a receipt using a "Used Car Wholesale Purchase Order" that displayed Wilson's alleged vehicle dealer license number. Wilson then ordered the truck from Titus-Will, using his own check to make a $7,000 down payment. The purchase order indicated the truck was being sold to Wilson. "Dealer" was written in the space on the form for tax. Wilson told the Titus-Will salesman handling the sale that he was ordering the truck for resale.

On October 13, 1989, Wilson told Heinrich the truck was ready for delivery. Heinrich paid Wilson $15,549.55 as final payment, including tax and license fees. Wilson gave Heinrich a copy of the purchase order and of an options checklist with corresponding prices. These documents indicated that Wilson was buying the truck from Titus-Will. The Titus-Will salesman had signed off on the options list; Wilson marked it "paid in full" and signed it after Heinrich paid him. On the same day, at Wilson's behest, Heinrich signed a Washington application for motor vehicle title.

Wilson agreed to deliver the truck to Heinrich at Titus-Will on Saturday, October 21, 1989. He arranged with a

Titus-Will salesman to deliver a check on the morning of October 21 to a clerk in the Titus-Will office and, in return, to receive the truck keys and paperwork. The clerk accepted Wilson's check for $11,288, postdated to Monday, October 23, 1989, and delivered to Wilson a packet containing the keys to the truck, the owner's manual, an odometer disclosure statement, and a warranty card. The odometer statement, which Wilson and the Titus-Will salesman signed, showed Wilson as the transferor. Titus-Will did not fill out the warranty card with the name and address of the purchaser because the sale appeared to be dealer to dealer, with the warranty to benefit the ultimate purchaser.

Titus-Will retained the manufacturer's certificate of origin. The certificate of origin is apparently a "pretitle" document used to obtain state title documents when a car is sold to a nondealer. Titus-Will, believing this to be a dealer to dealer transaction, planned to give the certificate to Wilson when his check cleared. Wilson could then obtain title to the vehicle in the name of his customer.

Wilson immediately taped Heinrich's application for title in the rear window of the truck that was parked on the Titus-Will lot. When Heinrich arrived, Wilson gave him the keys and documents and Heinrich drove off in the truck.

Wilson's check did not clear. Titus-Will demanded return of the truck. On November 6, Wilson picked up the truck from Heinrich, telling him he would have Titus-Will make certain repairs under the warranty. Wilson returned the truck to Titus-Will.

On November 9, 1989, Wilson admitted to Heinrich that he did not have funds to cover his check to Titus-Will and that Titus-Will would not release the truck without payment. Heinrich then asked Titus-Will for the truck; it refused. By a pretrial arrangement, Heinrich regained possession of, but not clear title to, the truck on April 1, 1990.

Heinrich sued Titus-Will and Wilson, seeking replevin of the truck and damages for his loss of use. Heinrich obtained a default order against Wilson. After a bench trial, the court

awarded Heinrich title to the truck and $3,050 in damages for loss of its use.

■ On appeal, Titus-Will argues that the trial court erroneously applied the entrustment doctrine of RCW 62A.2-403; it also argues the law of agency, not the Uniform Commercial Code (UCC), controls and requires• reversal. Heinrich contends that in addition to the entrustment doctrine, the trial court's findings also support application of the voidable title doctrine contained in RCW 62A.2-403. As Titus-Will assigns error only to the trial court's legal conclusions, our review is de novo. *Hoffer v. State*, 110 Wn.2d 415, 420, 755 P.2d 781 (1988), *aff'd on reconsideration*, 113 Wn.2d 148, 776 P.2d 963 (1989).

### THE ENTRUSTMENT DOCTRINE

■ RCW 62A.2-403(2) and (3) contain the entrustment provisions of the Uniform Commercial Code. The statute provides as follows:

> (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.
>
> (3) "Entrusting" includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

Former RCW 62A.2-403(2), (3). To prevail under this statute, Heinrich must show (1) Titus-Will "entrusted" the truck to Wilson and, thus, empowered Wilson subsequently to transfer all rights of Titus-Will in the truck to Heinrich; (2) Wilson was a merchant dealing in automobiles; and (3) Heinrich bought the truck from Wilson as a "buyer in ordinary course of business." *See Williams v. Western Sur. Co.*, 6 Wn. App. 300, 302, 492 P.2d 596, *review denied*, 80 Wn.2d 1007 (1972).

■ Three general policies support RCW 62A.2-403(2), the UCC provision placing the risk of loss on the entruster. First, it protects the innocent buyer who, based on his

observation of goods in the possession of a merchant of those goods, believes that the merchant has legal title to the goods and can, therefore, pass title in the goods to another. *See* Official Comment 2, RCWA 62A.2-403. The statute carries forward the pre-Uniform Commercial Code law of estoppel under which an owner, who clothes a merchant with apparent ownership of or authority to sell goods, is estopped from denying such authority as against one buying the goods from the merchant in good faith. 3 Ronald A. Anderson, *Uniform Commercial Code* § 2-403: 29 (3d ed. 1983); *see, e.g., Gramm-Bernstein Motor Truck Co. v. Todd,* 121 Wash. 145, 147-48, 209 P. 3 (1922).

Secondly, the entrustment clause reflects the idea that the entruster is in a better position than the innocent buyer to protect against the risk that an intermediary merchant will not pay for or not deliver the goods.[2] *Correria v. Orlando Bank & Trust Co.,* 235 So. 2d 20, 25 (Fla. Dist. Ct. App. 1970); *Sacks v. State,* 172 Ind. App. 185, 197-98, 360 N.E.2d 21, 28 (1977); *Canterra Petroleum, Inc. v. Western Drilling & Mining Supply,* 418 N.W.2d 267, 273-74 (N.D. 1987); *Apeco Corp. v. Bishop Mobile Homes, Inc.,* 506 S.W.2d 711, 718-19 (Tex. Civ. App. 1974).

Thirdly, the entrustment clause facilitates the flow of commerce by allowing purchasers to rely on a merchant's apparent legal right to sell the goods. *Cugnini v. Reynolds Cattle Co.,* 687 P.2d 962, 967 (Colo. 1984); *Standard Leasing Corp. v. Missouri Rock Co.,* 693 S.W.2d 232, 237 (Mo. Ct. App. 1985); *Canterra,* 418 N.W.2d at 273; Anderson, *supra* § 2-403:4, at 570; 1 James J. White & Robert S. Summers, *Uniform Commercial Code* 193 (3d ed. 1988); *see also First Nat'l Bank v. Carbajal,* 132 Ariz. 263, 266, 645 P.2d 778, 781 (1982); *Welch v. Cayton,* 183 W. Va. 252, 257 n.7, 395 S.E.2d 496, 501 (1990). Without the safeguards of the

---

[2]Long before adoption of the UCC, Washington courts recognized the equitable principle that between two innocent parties, the one who enabled a third person to do the wrong must suffer the loss. *E.g., Ketner Bros., Inc. v. Nichols,* 52 Wn.2d 353, 356, 324 P.2d 1093 (1958); *Linn v. Reid,* 114 Wash. 609, 611, 196 P. 13 (1921); *Orillia Lumber Co. v. Chicago, M. & P.S. Ry.,* 84 Wash. 362, 368, 370, 146 P. 850 (1915).

entrustment provision, a prudent buyer would have to delay the finalization of any sizeable sales transaction for the time necessary to research the merchant's ownership rights to the goods.

## A. Entrusting

The UCC definition of "entrusting", contained in RCW 62A.2-403(3), is broad. *Cugnini,* 687 P.2d at 966. The statute declares that "any delivery and any acquiescence in retention of possession" constitutes entrustment. RCW 62A.2-403(3). A person can entrust goods to a merchant by a variety of methods, such as consigning them, creating a bailment, taking a security interest in inventory, leaving them with the merchant after purchase, and delivering them for purposes of repair. Official Comment 2, RCWA 62A.2-403; White & Summers, *supra* at 191-92. A sale can also constitute an entrustment when some aspect of the transaction remains incomplete. White & Summers, *supra* at 191 & n.25 (the definition of entrusting includes the transactions of purchase listed in UCC § 2-403(1)); *see English v. Ralph Williams Ford,* 17 Cal. App. 3d 1038, 1043, 1046, 1048-49, 95 Cal. Rptr. 501, 503, 505, 507 (1971); *Perimeter Ford, Inc. v. Edwards,* 197 Ga. App. 747, 747, 748, 399 S.E.2d 520, 521, 522 (1990).

Titus-Will properly concedes that it entrusted the truck to Wilson. However, it argues Wilson was not a merchant and Heinrich was not a buyer in ordinary course. Further, Titus-Will contends that the timing of the entrusting deprived Wilson of the power to transfer its rights.

## B. Merchant

■ Titus-Will argues that Wilson was not a merchant because he had no inventory. However, it is not necessary to possess an inventory to fit within the broad statutory definition of merchant.[3] Article 2 of the UCC defines (in part)

---

[3]Although Official Comment 2, RCWA 62A.2-403 notes that the entrusting provisions reflect the principle of "protecting persons who buy in ordinary course out of inventory", nothing in the text of UCC § 2-403 "requires the goods to be physically located in a seller's inventory." White & Summers, *supra* at 193;

"merchant" as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction". RCW 62A.2-104(1). Wilson was a merchant who dealt in automobiles; he held himself out as a dealer in automobiles and appeared to be a dealer in automobiles. Both parties treated him as one. Titus-Will processed all the documents as it would for a dealer and understood that Wilson was buying the truck for resale.

■ Titus-Will also argues that Wilson was not a merchant because he did not have a vehicle dealer license. However, the UCC does not require proper state licensing for merchant status. RCW 62A.2-104(1), .2-403(2). Wilson's apparent violation of state licensing statutes may subject him to penalties, but it does not void an otherwise valid UCC commercial transaction. *See Perimeter Ford*, 197 Ga. App. at 749, 399 S.E.2d 522. Indeed, the exclusion of an unlicensed dealer from merchant status under the UCC would be contrary to the statutory purpose of protecting innocent purchasers from the illegal (even larcenous) conduct of the entrustee. *See* RCW 62A.2-403(3); Official Comment 2, RCWA 62A.2-403.

### C. Buyer in Ordinary Course

There is also substantial evidence that Heinrich was a "buyer in ordinary course of business" although the trial court referred to him as a "good faith purchaser for value". A buyer in ordinary course of business is

> a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind[.]

RCW 62A.1-201(9). "Buying" "includes receiving goods . . . under a pre-existing contract for sale". RCW 62A.1-201(9). Good faith is "honesty in fact in the conduct or transaction concerned." RCW 62A.1-201(19).

---

*Schneider v. J.W. Metz Lumber Co.*, 715 P.2d 329, 333 (Colo. 1986); *Cugnini*, 687 P.2d at 966; *Executive Coach Builders v. Bush & Cook Leasing, Inc.*, 81 Ohio App. 3d 808, 813, 612 N.E.2d 408, 411 (1992).

156

■ The amount of the consideration is significant as evidence of good faith. White & Summers, *supra* at 188. Heinrich gave substantial value for the truck, more than Wilson agreed to pay Titus-Will. Nor did Heinrich know or have a basis to believe that Wilson's sale and delivery of the truck to him violated Titus-Will's ownership or security interest rights. There was no showing that Heinrich acted other than in good faith. As the trial court noted in its memorandum decision, it is not unusual for a buyer to purchase a car that the dealer has acquired from another dealer. Wilson's illegal and fraudulent activity does not taint Heinrich's status as a buyer under RCW 62A.2-403(2). When Heinrich accepted delivery after previously paying Wilson, Heinrich was "buying" as defined by RCW 62A.1-201(9).

### D. Timing of Entrustment

Titus-Will also argues that the UCC entrustment provisions should not apply because it entrusted the truck to Wilson *after* Heinrich had completely paid Wilson. This is an issue of first impression in this jurisdiction.

Before the completion of the Wilson-Heinrich sales transaction, Titus-Will entrusted Wilson not only with the truck, but also with the signed odometer disclosure statement, the owner's manual, the warranty card, and the keys. By doing so, Titus-Will clothed Wilson with additional indicia of ownership and with the apparent authority to transfer an ownership interest in the truck. It also enabled Wilson to complete the sales transaction. RCW 62A.2-401(2) ("Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods"). In addition, the entrustment allowed Wilson to continue to deceive Heinrich from October 21, 1989, the date of delivery of possession, to November 9, 1989, when Wilson finally admitted the truth. We believe that under these circumstances, application of the entrustment doctrine, RCW 62A.2-403(2), furthers the policy of protecting the buyer

who relies on the merchant's apparent legal ability to sell goods in the merchant's possession.[4]

The second rationale for the entrustment doctrine also supports its application here. Titus-Will, in the business of selling cars, was in a better position than Heinrich to protect itself against another dealer/broker who might fail to pay for the goods. It could have insured against the loss, and it could have adopted preventive procedures. For example, it simply could have advised Wilson to pick up the car Monday after the check had cleared the bank. Although Heinrich might also have taken precautions, as only an occasional purchaser of motor vehicles he was in a less advantageous position to anticipate and protect against Wilson's fraudulent conduct.

The third rationale for the entrustment doctrine focuses on the flow of commerce. Here we consider the potential impact on commercial transactions of requiring purchasers to research their dealer/broker's legal title before accepting possession of the goods. Although the record contains no evidence on this issue, it seems obvious that this requirement would inevitably cause some delay. *Fuqua Homes Inc. v. Evanston Bldg. & Loan Co.*, 52 Ohio App. 2d 399, 405-06, 370 N.E.2d 780, 784-85 (1977).

Requiring the entruster to retain the burden of risk, even when the entrustment occurs after a third party purchaser gives value, supports the policies underlying the entrustment doctrine. Thus, we decline to graft a timing requirement onto the statute. Finally, we note a similarity between this case and those cases where entrustment occurs before the purchaser gives value. In either instance, the seller is at risk of loss because of its own conduct in entrusting the goods to another. The trial court did not err in applying the entrustment doctrine and granting replevin.

---

[4]We note that another court faced with similar facts held that the entrustment doctrine does not apply to those cases in which the entrusting of possession does not cause and precede payment by the buyer. *DePaulo v. Williams Chevrolet-Cadillac, Inc.*, 3 U.C.C. Rep. Serv. (Callaghan) 600 (Pa. C.P. 1965).

158

Notwithstanding our affirmance of the trial court's decision based on the entrustment doctrine, we also consider the voidable title doctrine, also included in RCW 62A.2-403, as an additional basis for recovery. We note that although the voidable title doctrine was argued to the trial court, the trial court did not expressly rely on this theory in its findings of fact and conclusions of law. However, the trial court did make findings and conclusions that address the elements of voidable title. Furthermore, Heinrich, in the Respondent's brief, thoroughly argued the elements of the doctrine. Accordingly, we analyze the applicability of the voidable title doctrine to these facts. *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 702, 853 P.2d 908 (1993).

Several of the elements of the voidable title doctrine overlap those of the entrustment doctrine. By application of the doctrine, a good faith purchaser for value acquires good title from a seller with "voidable title". The voidable title doctrine, however, does not include a requirement that the buyer purchase from a "merchant" dealing in goods of that kind. Titus-Will contends that the voidable title concept is not applicable here because Wilson did not intend to take title to the truck for himself. It further argues that Heinrich's evidence was insufficient to prove this theory.

■ RCW 62A.2-403(1) provides that one with "voidable title" can transfer good title to a good faith purchaser for value. Previous Washington statutory law contained an identical principle. RCWA 62A.2-403 Washington Comments; *Fisher v. Thumlert*, 194 Wash. 70, 75, 76 P.2d 1018 (1938). The UCC does not define "voidable title". However, statute and case law describe its characteristics, and commentators note that "[t]he title of the seller is voidable whenever by the pre-Code law it would be subject to avoidance as between the original parties." Anderson, *supra* § 2-403:20, at 579.[5]

---

[5]For a discussion by Washington courts of voidable title and its impact on third parties, *see, e.g., Fisher,* 194 Wash. at 73-75; *Linn v. Reid,* 114 Wash. 609, 611-12, 196 P. 13 (1921); *Finney v. Farmers Ins. Co.,* 21 Wn. App. 601, 607, 586 P.2d 519

Voidable title exists only if the title claimant has some legal interest in the property. Thus, a subsequent purchaser acquires no title to stolen goods, despite the consideration paid or good faith of the later transaction. RCW 10.79.050; Anderson, *supra* § 2-403:26. Voidable title may exist although the claimant acquired an interest in the property through a transaction flawed by a lack of good faith or a technical defect.

> Where the original owner parts with the goods voluntarily in circumstances which, while deplorable, do not constitute outright theft, there is always the chance that the transferee will acquire apparent ownership or 'voidable title' and, thanks to this altered state, may be able to pass along better title to a good faith purchaser than he himself may have.

Thomas M. Quinn, *Uniform Commercial Code Commentary and Law Digest* § 2-403[A][5] (1978); *see Linn v. Reid*, 114 Wash. 609, 611-12, 196 P. 13 (1921); Anderson, *supra* § 2-403:27. The dictionary defines the term "voidable" as "capable of being voided . . . may be set aside usually at the option of one party". *Webster's Third New International Dictionary* 2562 (1966). Wilson's ownership rights to the truck meet the criteria for voidable title.

RCW 62A.2-403(1) applies the "voidable title" doctrine to three particular situations. In each of these instances a purchaser who obtains possession of goods through a "transaction of purchase" has the power to convey good title to a good faith purchaser for value. RCW 62A.2-403(1); Anderson, *supra* § 2-403:20, at 580. The portion of the pertinent statute is as follows:

> A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> . . . .
>
> (b) the delivery was in exchange for a check which is later dishonored . . ..

RCW 62A.2-403(1).

---

(1978), *aff'd*, 92 Wn.2d 748, 600 P.2d 1272 (1979); *Wise v. Truck Ins. Exch.*, 11 Wn. App. 405, 407-09, 523 P.2d 431, *review denied*, 84 Wn.2d 1006 (1974).

■ For Heinrich to prevail under this section, he must establish that (1) Titus-Will delivered to Wilson "under a transaction of purchase"; (2) Wilson paid Titus-Will for the truck with a bad check; and (3) Heinrich was a good faith purchaser for value. The trial court found, and Titus-Will does not dispute, that Wilson paid for the truck with a bad check. Titus-Will does contend that the transaction it engaged in with Wilson was not a "purchase" transaction. It further disagrees with the trial court's characterization of Heinrich as a good faith purchaser for value.

## A. Transaction of Purchase

Titus-Will argues that it did not deliver the truck to Wilson under a "transaction of purchase". In its brief, Titus-Will refers to Wilson's interest as a "mere possessory interest" rather than a purchaser's interest. It contends that since Wilson was acting as Heinrich's agent, Wilson did not acquire an independent interest in the truck.

■ The UCC defines "purchase" very broadly as any "voluntary transaction creating an interest in property", including "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, or gift". RCW 62A.1-201(32). Wilson gave Titus-Will two of his own checks in exchange for delivery of the truck. Titus-Will's purchase order was in Wilson's name. Titus-Will's acceptance of Wilson's check coupled with its transfer of possession of the truck satisfied the criteria for a purchase transaction.[6] As we discuss below, agency law does not change the outcome here.

## B. Good Faith Purchaser for Value

■ Wilson had power to pass good title to a good faith purchaser for value. Heinrich clearly "purchased" the truck, RCW 62A.1-201(32), and, as we concluded in our discussion of the entrustment doctrine, did so in good faith. He also gave value. Value is defined broadly; among other methods,

---

[6]When a seller delivers goods to a merchant purchaser under a transaction of purchase, but the transaction is in some way incomplete, the seller may have both conveyed voidable title under RCW 62A.2-403(1) and entrusted under RCW 62A.2-403(2), (3).

a person gives value for rights when he acquires them "by accepting delivery pursuant to a pre-existing contract for purchase", "in return for any consideration sufficient to support a simple contract", and even in satisfaction of a preexisting claim. RCW 62A.1-201(44)(b), (c), (d). Thus, the fact that Wilson paid Titus-Will with a check that the bank later dishonored did not prevent Heinrich from obtaining good title. RCW 62A.2-403(1)(b); *e.g., Burk v. Emmick*, 637 F.2d 1172, 1174 (8th Cir. 1980) (Iowa law); *English*, 17 Cal. App. 3d at 1047-48, 95 Cal. Rptr. at 506-07.

Nonetheless, Titus-Will claims that Heinrich cannot be a good faith purchaser because we must impute Wilson's alleged fraudulent conduct to Heinrich. We address and reject that argument below in our discussion of the applicability of agency law.

### C. Retention of Title Documents

Titus-Will claims that title did not pass to Wilson because (1) Titus-Will retained the manufacturer's certificate of origin for the truck and (2) Titus-Will made no attempt to apply for a certificate of ownership for Wilson or Heinrich. This raises two questions. Does the Washington State vehicle title statute control over the UCC, and did Titus-Will convey title to Wilson under the UCC though it retained paper "title"? We answer these questions "no" and "yes" respectively.

Under the UCC, "in the absence of a local statute declaring the sale of an automobile void when a title certificate is not delivered, title to an automobile passes upon delivery, in harmony with UCC § 2-401." Anderson, *supra* § 2-401:9, at 520. Washington's "certification and registration statutes [RCW 46.12] merely penalize noncompliance, rather than render[ing] a noncomplying transaction void or ineffectual". *Beatty v. Western Pac. Ins. Co.*, 74 Wn.2d 530, 542, 445 P.2d 325 (1968); *see, e.g.*, RCW 46.12.010, .101(6), .210, .220, .250-.270. *But cf.* RCW 46.12.102 (seller released from liability for vehicle's operation only by complying with certain aspects of the certificate statutes). As we have previously said, "these regulatory statutes have a broader public purpose than the immediate rights of seller and buyer *inter*

162

*se* and do not purport to deal with, let alone affect, such rights." *Baydo's Trailer Sales, Inc. v. Department of Licensing,* 32 Wn. App. 332, 336, 647 P.2d 55 (1982).

Thus, the transfer of a vehicle may be valid despite the failure to transfer the certificate properly. *Beatty,* 74 Wn.2d at 542-43; *Junkin v. Anderson,* 12 Wn.2d 58, 74, 120 P.2d 548, 123 P.2d 759 (1941); *Baydo's,* 32 Wn. App. at 336. Title and registration certificates are only rebuttable prima facie evidence of automobile ownership. *Wildman v. Taylor,* 46 Wn. App. 546, 556-57, 731 P.2d 541 (1987); *Baydo's,* 32 Wn. App. at 336; *Crawford v. Welch,* 8 Wn. App. 663, 664, 508 P.2d 1039, *review denied,* 82 Wn.2d 1009 (1973); *see Gams v. Oberholtzer,* 50 Wn.2d 174, 177, 179, 310 P.2d 240 (1957); *Junkin,* 12 Wn.2d at 75-76. In this state, the UCC provisions, not the certificate of title statutes, govern who holds title to a vehicle. Heinrich presented sufficient evidence to rebut Titus-Will's certificate of title evidence.

Nor does the fact that Titus-Will retained paper title, the certificate of origin, produce a different outcome under the UCC. When a determination of title is "material", the provisions of RCW 62A.2-401 govern: "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."[7] RCW 62A.2-401(1). Absent the required explicit agreement,

> title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place[.][8]

RCW 62A.2-401(2); *see Hecomovich v. Nielsen,* 10 Wn. App. 563, 570, 518 P.2d 1081, *review denied,* 83 Wn.2d 1012 (1974).

---

[7]Even if the parties intend and explicitly contract that the seller will retain title to goods delivered to the buyer, as in a conditional sale, the code provides that any retention of title "is limited in effect to a reservation of a security interest." RCW 62A.2-401(1); *see* Anderson, *supra* § 2-401:12, at 524, § 2-401:19, at 528, § 2-401:54, at 550.

[8]An automobile certificate of title is not included in the UCC definition of "document of title". RCW 62A.1-201(15); *In re R&R Contracting, Inc.,* 4 B.R. 626, 629 n.2 (Bankr. E.D. Wash. 1980); Anderson, *supra* § 2-401:9, at 521.

Furthermore, RCW 62A.2-403 governs when and how the buyer can transfer title to a third party despite a conflicting agreement with the seller. RCW 62A.2-403; White & Summers, *supra* at 186; Anderson, *supra* § 2-403:3, at 568, § 2-403:22, at 582; *Ledbetter v. Darwin Dobbs Co.*, 473 So. 2d 197, 200 (Ala. Civ. App. 1985).

Under RCW 62A.2-401(2), Titus-Will transferred title to Wilson when it delivered the truck. At best, Titus-Will retained a security interest. RCW 62A.2-401(1). We find no evidence of an explicit agreement between Titus-Will and Wilson to delay the transfer of title, and the trial court made no finding on this issue. The record is bereft of communication between Titus-Will and Wilson. Apparently, a clerk accepted Wilson's postdated check on Saturday, October 21, without comment, and relinquished possession of the truck and related documents. Absent proof of an explicit agreement to the contrary, Wilson acquired title along with possession.

## AGENCY

Titus-Will emphasizes the trial court's conclusion of law that Wilson was Heinrich's agent "for the purpose of finding from another dealer a specific vehicle". From this conclusion, Titus-Will argues the applicability of two general principles under the law of agency. First, citing *Young v. Globe Indem. Co.*, 156 Wash. 260, 256-66, 286 P. 651 (1930), it contends that Titus-Will, as one who contracted with the agent of an undisclosed principal, believing in good faith that the agent is the real party in interest, may assert any defenses against Heinrich that it could assert against Wilson.

The trial court concluded that a limited agency existed. Heinrich went to Wilson, a vehicle dealer, seeking a particular truck. Wilson became Heinrich's agent for the purpose of finding such a vehicle to purchase so that he could resell it to Heinrich. However, the trial court also found that Wilson represented to Titus-Will that the truck was for "resale" and that "Titus-Will Ford Sales, Inc. [was] aware at that time

that the vehicle was intended for use by someone other than Wilson." Finding of fact 4. In other words, Titus-Will did not believe in good faith that Wilson was the real party in interest. Thus, the first proffered agency principle is not applicable here, and the trial court did not err in refusing to allow Titus-Will to assert against Heinrich any defenses it had against Wilson.

Secondly, Titus-Will argues that we must impute the agent Wilson's fraud to Heinrich, Wilson's principal. This would exclude Heinrich from the UCC definition of good faith purchaser or buyer in ordinary course. Heinrich cites the following rule of agency law:

> Generally speaking, a principal is chargeable with notice of facts which are within the knowledge of his agent, acquired within the scope of the agent's authority. A well recognized exception to this rule is that, where an agent acquires information which it would be to his advantage to conceal from his principal, it is assumed that he did not impart such knowledge to his principal, and accordingly knowledge would not be imputed to the principal. This exception, however, is qualified by the rule that, if the agent is the sole representative of the principal, or the only person or means by which the principal acts, then the knowledge of the agent will be imputed to the principal, and the general rule applies, and not the exception thereto.

*Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.,* 32 Wn. App. 32, 40, 645 P.2d 1122, *review denied,* 97 Wn.2d 1036 (1982) (quoting *Higgins v. Daniel,* 5 Wn.2d 134, 139, 105 P.2d 24 (1940)).

In its memorandum decision, the trial court explained why it did not apply agency rules in this case, stating:

> The Court does not argue with the law of agency as cited by the defendant. It is the Court's conclusion that the agency rules set forth in those cases simply are not applicable to this particular course of commercial dealing.

The applicability of the agency rule cited requires findings and conclusions that the trial court did not make. First, it did not find that Wilson intended to defraud Titus-Will. Rather, the following language of finding of fact 8 suggests that Wilson planned to cover the check but was unable to do

so: "Wilson was unable to make good on the check . . .." Further, the applicability of the "sole representative" exception to agency law was not argued to the trial court. Accordingly, the trial court made no conclusions of law as to its applicability. In light of the trial court's reasoning along with its findings and conclusions, we cannot say that it erred in declining to apply agency principles to these facts.

■ Finally, we note that the mere existence of a limited agency relationship does not provide a rationale for removing the transaction from the purview of section 2-403. *See English ; Perimeter Ford; Couch v. Cockroft*, 490 S.W.2d 713 (Tenn. Ct. App. 1972) (UCC § 2-403 applied where merchant was also the buyer's agent to obtain goods the merchant did not initially possess in inventory). By incorporating the law of principal and agent, as a "supplement [to] its provisions", RCW 62A.1-103, the UCC does not exclude persons with a limited agency relationship from its definitions of good faith purchaser, buyer in ordinary course, and merchant. Heinrich met the definitions of good faith purchaser and buyer in ordinary course, and Wilson met the definition of merchant.

We affirm the trial court's judgment.

MORGAN, C.J., and ALEXANDER, J., concur.