209 P.3d 543 (2009)
Scott and Christy HENSRUDE, Respondents,
v.
Joel SLOSS and Jane Doe Sloss, husband and wife and the marital community composed thereof, Appellants, and
AGS, Performance, Inc., a Washington corporation, dba The Auto Gallery of Seattle; Tyson J. Spring and Erika F. Spring, husband and wife; and Great American Insurance Company of New York, a foreign corporation, Bond No. 790-2880-525035, Defendants.
No. 61418-5-I.
Court of Appeals of Washington, Division 1.
June 22, 2009.
*544 James H. Clark Jr., Oseran Hahn Spring Straight & Watts, P.S., Bellevue, WA, for Respondents.
Jay R. Chock, Brian Talcott, Laura N. Althouse, Dunn Carney Allen Higgins & Tongue LLP, Portland, OR, Appellants.
AGID, J.
¶ 1 Scott Hensrude bought Joel Sloss's Ferrari from a consignment dealer. Sloss regained possession of the car after reporting it stolen when the dealer failed to pay him. Hensrude sued Sloss, alleging that he was the rightful owner under the Uniform Commercial Code[1] entrustment doctrine and that he was entitled to possession and incidental damages resulting from Sloss's wrongful detention. The trial court agreed. Sloss argues that the trial court erred by failing to admit evidence of a settlement between Hensrude and the dealer for the purpose of offsetting Hensrude's recovery by the amount of the settlement. Sloss also contends the trial court should have admitted evidence of Hensrude's lender's alleged failure to follow internal lending policies in order to apportion fault. We affirm because both the dealer's agreement to indemnify Hensrude and the evidence of the lender's alleged negligence are not relevant to determining whether Hensrude is entitled to ownership and possession of the Ferrari under his entrustment and replevin actions.

FACTS
¶ 2 In fall 2005, Joel Sloss tried to sell his 1998 Ferrari 355 F1 Berlinetta on the Auto Gallery of Seattle (AGS) website.[2] In January 2006, Sloss delivered his Ferrari to the AGS showroom and entered into a consignment and sales agreement with AGS that expired on March 21, 2006. He left his car in the AGS showroom until it sold. On April 14, 2006, Scott Hensrude negotiated with AGS to purchase the Ferrari subject to financing from the Boeing Employees Credit Union (BECU). Hensrude paid $81,000, plus tax and licensing, for the Ferrari on April 15, 2006, with a check from BECU. He drove it off the lot that day.
¶ 3 Sloss never received payment from AGS or Tyson Spring, the president of AGS. Hensrude had no reason to suspect that Spring would misappropriate the purchase funds. Hensrude did not receive title to the car at the time of sale because AGS did not have physical possession of the title.[3] After April 15, 2006, Sloss had trouble contacting Spring, but he learned that the Ferrari was at Cavallino Auto for repair work. Sloss *545 reported the Ferrari stolen, and Hensrude returned the car when threatened with arrest by the Seattle Police Department on the basis of Sloss's complaint. The police returned the Ferrari to Sloss in June 2007. Sloss drove the Ferrari 2,200 miles after he regained possession.
¶ 4 Hensrude sued AGS and Spring on June 27, 2006, asserting claims for fraud, wrongful conversion, and a Consumer Protection Act[4] violation. Spring filed for bankruptcy, and Hensrude filed a claim against him in the bankruptcy proceeding objecting to the discharge of his liability.[5] Hensrude settled with Spring in the bankruptcy proceeding and dropped the claims against him.[6] Hensrude added Sloss as a defendant and filed a third amended complaint, asserting his right to title and possession under the entrustment doctrine of the UCC, RCW 62A.2-403, and replevin, chapter 7.64 RCW. Hensrude also brought unjust enrichment and conversion claims.
¶ 5 Sloss offered the settlement agreement between Hensrude and Spring as exhibit 12, and Hensrude moved in limine to exclude it. The trial court granted the motion, concluding that the evidence was not relevant for purposes of apportioning liability under the tort reform act[7] and that ER 408 barred evidence about the Hensrude/Spring settlement. The trial court found in favor of Hensrude on his entrustment doctrine claim and awarded him possession, title, and $4,400 in damages for the depreciation in the Ferrari's value during Sloss's wrongful detention. Sloss appeals, arguing that the trial court erred by excluding evidence of the settlement agreement. Sloss also appeals from the trial court's exclusion of expert testimony about BECU's alleged negligence in processing Hensrude's loan.

DISCUSSION
¶ 6 Sloss argues that the trial court erred by refusing to apportion liability under the Tort Reform Act among other allegedly liable parties, such as Spring and BECU. Specifically, Sloss contends that the trial court should have considered evidence of the settlement between Hensrude and Spring in order to proportionally reduce Sloss's liability under RCW 4.22.060(2).[8] And Sloss argues that RCW 4.22.070's fault allocation provision requires the trial court to hear expert testimony about BECU's alleged failure to follow its lending policies when it loaned Hensrude money to buy the Ferrari.[9] Accordingly, Sloss contends that the trial court erred by concluding that the evidence was irrelevant. We review the trial court's interpretation of statutes and evidentiary rules de novo.[10] We review the trial court's decision not to admit evidence under a correctly *546 interpreted evidentiary rule for abuse of discretion.[11]
¶ 7 Hensrude argues that the trial court's exclusion of the settlement agreement is not reviewable because Sloss failed to make an offer of proof.[12] ER 103(a)(2) provides that error may not be predicated on a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."[13] Sloss concedes that he did not make an offer of proof but argues that the substance of the settlement agreement was apparent.[14] From the record we know that: a settlement agreement exists, Sloss alleges that Spring would not have to pay if Hensrude recovered from Sloss, and the trial court determined the settlement did not provide for double recovery. Accordingly, we are able to review whether the trial court erred by concluding that evidence of the settlement was not relevant to Hensrude's entrustment and replevin claims.
¶ 8 Irrelevant evidence is not admissible.[15] ER 408 bars admission of settlement agreements to prove the invalidity of a claim or its amount. But the rule does not "require the exclusion of such evidence when it is offered for another purpose."[16] Where the relative fault of multiple potentially liable parties is at issue, RCW 4.22.060(2) makes settlement agreements between the claimant and a person liable relevant for the purpose of offsetting the claimant's recovery against other persons.
¶ 9 RCW 62A.2-403(2) contains the entrustment provisions of the UCC and states that "[a]ny entrusting of possession of goods to a merchant who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in the ordinary course of business."[17] To prevail under this UCC provision, Hensrude was required to show that (1) Sloss "entrusted" the Ferrari to AGS/Spring, (2) AGS/Spring was a merchant dealing in automobiles, and (3) Hensrude bought the Ferrari from AGS/Spring as a buyer "`in ordinary course of business.'"[18] A party who prevails under the entrustment doctrine receives "all rights" of the entruster, not merely a portion of the ownership rights *547 according to the respective degree of fault.[19] The issue before the trial court was whether the UCC provision allocating the risk of default to the entruster applies. As a result of that determination, Hensrude would either be entitled to all rights that Sloss had in the Ferrari before he entrusted it to AGS or he would not own the Ferrari. Reducing the degree of Hensrude's ownership by the amount, if any, of his settlement with Spring has no place in RCW 62A.2-403(2)'s either/or ownership test. Therefore, evidence of the settlement agreement is not relevant to Hensrude's entrustment claim under ER 403 and is not admissible under ER 408.
¶ 10 Similarly, the replevin statute does not provide for fractional recovery of possession. Instead, a plaintiff who owns the property in question is entitled to immediate possession of that property.[20] Because Hensrude was entitled to all Sloss's rights in the Ferrari, he also takes full possession through replevin. Reducing the degree of possession awarded by the amount of Hensrude's settlement with Spring is not contemplated by the replevin statute. Accordingly, Hensrude's settlement with Spring does not help determine whether Hensrude is entitled to possession of the Ferrari under chapter 7.64 RCW.
¶ 11 When the wrongful detention results in damages, replevin also provides for an incidental damages award to restore full possession to the rightful owner.[21] Here, the relevant incidental damages determination is the amount of depreciation caused by Sloss's use while he wrongfully possessed it.[22] The settlement agreement is not relevant to determining the difference between the value of the property Hensrude was entitled to and the value of the property restored to him through replevin.
¶ 12 Sloss argues that the tort-like nature of replevin damages makes RCW 4.22.060(2) applicable, meaning that the trial court should have considered evidence of the Hensrude/Spring settlement to offset Hensrude's recovery from Sloss. But RCW 4.22.060(2)'s settlement offset provision does not automatically apply whenever damages are calculated in a tort-like manner. Applying the provision here would not make sense under the plain language of RCW 4.22.060(2) for two reasons. First, RCW 4.22.060(2) only applies to reduce the claimant's recovery by the settlement amount when "a person liable" settles a claim that is the same as one the claimant has against any other person. Hensrude, the "claimant," had claims for entrustment and replevin against Sloss. Because Spring was not an entruster and did not retain possession of Hensrude's Ferrari, Hensrude could not have brought entrustment or replevin claims against Spring. In other words, whatever claims Hensrude settled with Spring could not have arisen from the same set of facts that made Sloss an entruster and a wrongful possessor.[23] Accordingly, *548 Hensrude could not have settled the same claim with Spring as he had against Sloss. Similarly, Spring, while he is liable for other wrongs, is "not a person liable" for entrustment or replevin and therefore does not fit into the category of a "person liable" for the purposes of RCW 4.22.060(2). Second, from the informal offer of proof, it appears that Hensrude structured the settlement agreement so that Spring would only pay Hensrude if he was not able to recover against Sloss. Because Hensrude recovered against Sloss, no "amount paid" exists by which to reduce the incidental damages award against Sloss. Thus, evidence of the settlement agreement is not relevant under RCW 4.22.060(2) and is not admissible under ER 408.
¶ 13 Sloss also alleges that BECU would have discovered that Spring did not have lawful title to the Ferrari had it followed its internal procedures before loaning Hensrude the purchase money. Accordingly, Sloss argues that evidence of BECU's negligence should have been admitted for the purpose of apportioning fault to BECU under RCW 4.22.070. As we discussed above, adjudicating entrustment and replevin claims requires the trial court to determine ownership and possession, including incidental damages necessary to restore full possession to the rightful owner. Because resolving those claims does not require the trial court to determine the fault of any party, this is not an action "involving fault of more than one entity."[24] Thus, RCW 4.22.070 does not apply and evidence of BECU's negligence, if any, was properly excluded as irrelevant.
¶ 14 We affirm.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] Title 62A RCW.
[2] Sloss does not assign error to the trial court's findings of fact. Unchallenged findings are verities on appeal. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
[3] Sloss retained possession of the title through the date of trial. The trial court concluded that AGS had 45 days from the date of sale to deliver the title to Hensrude under WAC 308-66-190.
[4] Chapter 19.86 RCW.
[5] Sloss did not file a claim against Spring in bankruptcy.
[6] The terms of the settlement agreement are not part of the record.
[7] Chapter 4.22 RCW.
[8] RCW 4.22.060(2) provides:

A release, covenant not to sue, covenant not to enforce judgment, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount paid pursuant to the agreement unless the amount paid was unreasonable at the time of the agreement in which case the claim shall be reduced by an amount determined by the court to be reasonable.
[9] RCW 4.22.070(1) provides:

In all actions involving the fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW. For the purposes of RCW 4.22.070(1), "fault" is defined as:
[A]cts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim. The term also includes breach of warranty, and unreasonable assumption of risk, and unreasonable failure to avoid an injury or to mitigate damages.
RCW 4.22.015.
[10] State v. Foxhoven, 161 Wash.2d 168, 174, 163 P.3d 786 (2007); State v. Breazeale, 144 Wash.2d 829, 837, 31 P.3d 1155 (2001).
[11] See Foxhoven, 161 Wash.2d at 174, 163 P.3d 786 ("Failure to adhere to the requirements of an evidentiary rule can be considered an abuse of discretion.").
[12] Hensrude included the settlement agreement as an appendix to his brief. Because Hensrude did not move to supplement the record with new evidence under RAP 9.11, the improperly included settlement agreement does not form the basis for our decision.
[13] "An offer of proof serves three purposes: it informs the court of the legal theory under which the offered evidence is admissible; it informs the judge of the specific nature of the offered evidence so that the court can assess its admissibility; and it creates a record adequate for review." State v. Ray, 116 Wash.2d 531, 538, 806 P.2d 1220 (1991).
[14] A formal offer of proof is not necessary when the substance of the excluded evidence is apparent from the record. See id. Sloss also argues that an offer of proof was unnecessary because RCW 4.22.060 required the trial court to admit the settlement for the purposes of assessing damages. As we explain further below, settlement agreements may be relevant to apportioning liability under the Tort Reform Act, but that does not make them relevant where there is no liability to apportion, as was the case here.
[15] ER 403.
[16] Brothers v. Pub. Sch. Employees of Wash., 88 Wash.App. 398, 406, 945 P.2d 208 (1997).
[17] "`Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." RCW 62A.2-403(3).
[18] See Heinrich v. Titus-Will Sales, Inc., 73 Wash.App. 147, 152, 868 P.2d 169 (1994) (quoting Williams v. Western Sur. Co., 6 Wash.App. 300, 302, 492 P.2d 596, review denied, 80 Wash.2d 1007 (1972)). "`Buyer in the ordinary course of business' means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices." RCW 62A.1-201(9).
[19] RCW 62A.2-403(2). The trial court found that Hensrude satisfied the entrustment elements. Sloss does not appeal from that determination.
[20] RCW 7.64.010, .020; see also Apgar v. Great Am. Indem. Co., 171 Wash. 494, 18 P.2d 46 (1933) ("A replevin action is essentially one to determine title to, or right to possession of, personal property.").
[21] See Selland v. Douglas County, 4 Wash.App. 387, 389-90, 481 P.2d 573 (1971); see also Titus-Will, 73 Wash.App. at 151-52, 868 P.2d 169 (court awarded plaintiff title to truck and damages for loss of use under his claim for replevin); Hoff v. Lester, 25 Wash.2d 86, 168 P.2d 409 (1946) (right to recover damages for retention of property under replevin action); Radley v. Raymond, 34 Wash.2d 475, 484-85, 209 P.2d 305 (1949) (trial court granted replevin but did not award incidental damages resulting from wrongful detention of plaintiff's car. The Washington State Supreme Court reversed, instructing the trial court to award wrongful detention damages); Hoff v. Lester, 31 Wash.2d 937, 945, 200 P.2d 515 (1948) ("The applicable rules relative to damages in replevin actions are quickly stated: When the wrongful detention ... is established, `... the damages for detention include the depreciation in the value of the property and the value of the use of the property to the owner.'") (second alteration in original) (quoting Myers v. Walker, 173 Wash. 592, 596, 24 P.2d 97 (1933)).
[22] Here, the trial court determined that the Ferrari depreciated by $4,400, and Sloss does not assign error to that finding of fact.
[23] When one transaction gives rise to separate legal theories of relief, those different theories can be considered one claim. Snyder v. State, 19 Wash.App. 631, 635, 577 P.2d 160 (1978) (holding that the complaint and supporting affidavits actually present a single claim). Here, the set of facts supporting entrustment and replevin are not the same set of facts that support Hensrude's fraud, conversion, and CPA claims against Spring. Thus, Hensrude's complaint does not present a single claim against both Sloss and Spring.
[24] RCW 4.22.070.