[No. 207-41278-2.    Division Two.    May 26, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN JEROME
VINING, *Appellant*.

*J. W. McArdle* (of *Palmer, Willis, McArdle & Meyer*),
for appellant (appointed counsel for appeal).

*Lincoln Shropshire, Prosecuting Attorney,* and *Cameron K. Hopkins, Deputy,* for respondent.

ARMSTRONG, C. J.—Defendant John Jerome Vining appeals from a jury conviction of grand larceny. He was charged with appropriating to his own use, or the use of others, groceries of a value of $5,006.86 which were the property of his employer.

Defendant started work as a checker in Gerritsen's Village Market in Yakima on December 25, 1968. His employment was terminated on April 14, 1969 when his employer accused him of furnishing merchandise to a customer without charge and a series of similar instances.

During this period of time the store's bookkeeper noticed that sales receipts were considerably below the store's usual sales volume. On April 13, 1969 a fellow employee was directed by the store manager to watch defendant who was working as a grocery checker. The employee testified that defendant did not charge or collect for all of the groceries and merchandise sold to a certain customer. He stated that defendant rang up $39.05 on the register, collected $33 from the customer, and had the customer sign a register slip for the balance owing of $6.05. The observer further stated that he saw defendant slide several items across the check stand which were not rung up on the register. The observer took the groceries to the car and checked the prices of these items. He then cross checked items against the tape and confirmed that they were not charged. On the following day, this information was given to the store owner who calculated that the total bill should have been approximately $67.

The store owner asked the defendant to come into his office at the end of defendant's workday. In the presence of the store manager, the owner questioned the defendant at length. The owner testified that defendant admitted stealing groceries worth $1,841.38 and giving away groceries to various persons for whom he felt sorry. He stated that defendant was willing to admit responsibility for groceries

valued at $2,500 and was willing to pay the owner $5,000 if the matter was not reported to the police.

The store owner also presented store accounting records and explained that they showed a loss of $5,006.86 during the time defendant was in their employment.

The store manager corroborated the owner's testimony. He further testified that defendant admitted taking $150 to $200 worth of groceries each week in amounts of $15 to $20. The testimony of the owner and the store manager as to the alleged admissions was controverted by defendant.

Investigating police officers testified as to confessions of defendant given them on April 16, 1969 at the Yakima Police Station. An information had been filed on April 15, 1969 and the defendant was asked to come to the police station on the following day. He arrived with his wife at about 9:30 a.m. on that day. He was not escorted by police. He gave three statements over a period of 7 hours. The first statement was unsigned and exculpatory in nature. The second was written in defendant's own handwriting and made a general admission to taking groceries. The third was a detailed question and answer signed statement in which defendant admitted to specific acts of taking groceries for his own use and of giving groceries to customers.

The state was allowed to amend its information while presenting its case. The value of groceries taken was reduced from $5,006.86 to "more than $75.00".

Defendant makes three assignments of error in challenging the validity of his conviction. The issues raised thereby are whether the evidence supported a charge of grand larceny rather than separate charges of petit larceny; whether the state should have been permitted to amend the information, and also whether defendant's statements given to the police should have been admitted.

The third issue will be discussed first.

Defendant contends that the statements given to the police on April 16, 1969 should have been excluded from evidence and that the trial court committed prejudicial error in admitting them into evidence. Defendant argues

that his statements were the result of custodial interrogation under a defective warning of constitutional rights required by the procedural safeguards set forth in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966). Defendant argues that the result is an involuntary confession which must be excluded.

We set forth below the format of the warning given the defendant:

> The date is ............ The time is ................, Room ............, Yakima Police Department. Present during this statement is............
>
> ........................................................................................................................
>
> Q.  What is your true name?
> Q.  Your address?
> Q.  Your age and date of birth?
> Q.  *Do you understand that you have a right to remain silent?*
> Q.  *Do you understand that any statement that you may make will be used in Court against you at a later date?*
> Q.  *Do you understand that you have the constitutional right to have the advice of an attorney before making this statement?*
> Q.  *Do you understand that if you do not have the funds to hire an attorney the court will appoint an attorney for you free of charge to you?*
> Q.  Do you waive these rights?
> Q.  Do you understand what the word "waive" means?
> Q.  Is this statement voluntary on your part?

(Details and answers omitted. Italics ours.)

■ This is identical to the format found to be prejudicially defective in *State v. Creach,* 77 Wn.2d 194, 461 P.2d 329 (1969). The defect lies in the failure to advise defendant in plain and unequivocal terms that he had a right to have an attorney present during interrogation.

A concise statement of the applicable law is set forth in *Creach,* 77 Wn.2d at 199:

> In general, *Miranda* requires that, prior to custodial interrogation of an accused, he must be warned: (1) that he has the right to remain silent; (2) that any statement he does make can and will be used as evidence against him in a court of law; (3) that he has the right to consult

with counsel before answering any questions; (4) that he has the right to have his counsel present during the interrogation; (5) and that if he cannot afford an attorney, one will be appointed for him without cost to him, prior to questioning, if he so desires.

The ultimate question for decision is always: Was the confession or statement voluntarily given? *State v. Darst,* 65 Wn.2d 808, 815, 399 P.2d 618 (1965). *Miranda,* however, indicates that an affirmative answer cannot be supported unless the five warnings listed are given to the accused prior to interrogation.

■ The state responds to this contention by arguing that defendant was not in custody when the statements were taken. The argument appears to be that since this was not custodial interrogation a Miranda warning need not have been given. The state points out that defendant appeared at the police station by his own means of transportation and at his own convenience, and argues that the fact that the questioning occurred at the station house is not per se determinative of custody.

We find no merit to this contention. In *Creach* the court quoted with approval from *United States v. Gibson,* 392 F.2d 373 (4th Cir. 1968). As a part of that quotation it adopted the following statement at page 197:

"Custodial interrogation" certainly includes all station-house or police-car questioning initiated by the police, for there the "potentiality for compulsion" is obvious.

The state's next contention is that even if Miranda warnings should have been given, defendant's statements are admissible. The state argues that in neither the confession hearing nor the trial did defendant make known to the courts the particular defect in the warning which he raises for the first time on appeal.

■ We do not find merit in this contention. The admissibility of the confessions was generally challenged at the confession hearing and at the trial on grounds that they were not voluntarily given. The question of whether the defendant must point out the precise defect is answered in

*State v. Lampshire,* 74 Wn.2d 888, 893, 447 P.2d 727 (1968), wherein the court held that "an error need not be raised at trial in order to secure review if it amounts to an invasion of a constitutional right."

It is further argued that the error, if any, constitutes harmless constitutional error. We do not agree.

■ This question was last considered in *State v. Nist,* 77 Wn.2d 227, 235, 461 P.2d 322 (1969). Citing *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), the court held that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. Additionally, citing *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969), the court held that constitutional error in the trial of a criminal offense may be held harmless if there is overwhelming untainted evidence to support the conviction.

In the instant case, if we were to exclude from our consideration the confession obtained by the police, we would find that the evidence supporting conviction was substantial but controverted. Defendant repudiated his alleged confession to his employer, testifying that he was dumbfounded by his employer's charge, and did not admit to taking merchandise but was instead accused of taking various items for which his employer offered to accept money in return for not calling the police. Questions were raised about the motives of the employee who testified that he observed the defendant giving groceries to a customer.

Called as witnesses for the state, various customers who were alleged to have received free groceries from defendant denied receiving them. Another supermarket manager testified as to other explanations for the store's loss of revenue. The foregoing, considered with other factors in the record, precludes our stating that we are satisfied beyond a reasonable doubt that the constitutional error created by the defective Miranda warning and the admission of confessions made by defendant thereunder did not contribute to defendant's conviction. Nor can we say that this

tainted evidence was merely cumulative and that the un-tainted evidence supporting defendant's conviction was overwhelming. We must find that there was prejudicial constitutional error; we cannot find that it was harmless.

In fairness to the trial court we point out that this case was tried before *Creach* had so clearly delineated the Miranda guidelines. Since it was tried after the Miranda decision, we find *Creach* controlling for it was an interpretation of *Miranda*.

There are two remaining issues raised by defendant. The issue relating to proof of grand larceny by evidence of a series of petit larcenies must be fully explored because it will be necessary to furnish the court guidelines for the retrial of this case. This issue has been considered in older cases in this jurisdiction but we do not have completely definitive guidelines.

Defendant raised as his first issue the validity of the grand larceny charge. Defendant argues that under the evidence presented, the state must be satisfied with prosecuting defendant for several counts of petit larceny unless it can be shown beyond a reasonable doubt that defendant was acting pursuant to a general plan or design. We agree with the principle presented in this argument but feel that there is substantial evidence to support a determination that there was such a general plan or scheme. Further, we do not see that the precise issue was raised at trial by objection to testimony, exception to instructions, or by defendant's offer of an appropriate instruction. Accordingly, there was no ruling.

■ Where property is stolen from the same owner and from the same place by a series of acts there may be a series of crimes or there may be a single crime, depending upon the facts and circumstances of each case. If each taking is the result of a separate, independent criminal impulse or intent, then each is a separate crime, but, where the successive takings are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive

takings constitute a single larceny regardless of the time which may elapse between each taking. Annot. 136 A.L.R. 948 (1942); 52A C.J.S. *Larceny* § 53 (1968); 2 R. Anderson, Wharton's Criminal Law and Procedure § 450 (1957). *See State v. Ray,* 62 Wash. 582, 114 P. 439 (1911); *see also State v. Dix,* 33 Wash. 405, 74 P. 570 (1903). This is a factual question which must be determined by the jury. An appropriate instruction on the issue should be presented.

We need not dwell upon the remaining issue relative to amending the information to conform to the testimony because this issue will not be present on the retrial of the case. The dollar amount was amended from $5,006.86 to "more than $75.00", in accordance with CrR 101.04W(b). We find no error in this amendment.

The judgment will be reversed and a new trial granted.

PEARSON and PETRIE, JJ., concur.