20 P.3d 1044 (2001)
105 Wash.App. 738
STATE of Washington, Appellant/Cross-Respondent,
v.
John E. MERMIS, Cross-Appellant/Respondent.
No. 45203-7-I.
Court of Appeals of Washington, Division 1.
April 9, 2001.
*1045 Marilyn E. Brenneman, King County Prosecuting Attorney, Seattle, for Appellant.
James Elliot Lobsenz, Carney Badley Smith & Spellman, Seattle, for Respondent.
ELLINGTON, J.
The two questions in this case are first, whether John Mermis was a buyer or a thief, and second, if he was a thief, whether his crime was committed more than three years before the State filed the charge against him. The jury concluded Mermis was a thief, and ample evidence supports its verdict. The jury was not asked, however, whether the crime was committed within the statute of limitations period. On a post-trial motion, the trial judge vacated the jury's verdict, ruling that under the Uniform Commercial Code and the theft statutes, prosecution was barred by the statute of limitations.
We hold the court erred in its application of certain principles of the Uniform Commercial Code, and reverse the vacation of the judgment. Because one of the two alternative means of theft may have been barred by the statute of limitations, we remand for retrial.

FACTS
Terry Johnson was a businessman engaged in several multi-million dollar enterprises. During the summer of 1995, he met Mermis through a business associate. For several weeks, Mermis spent much time with Johnson and his family and friends. He ingratiated himself with tall tales about his personal history, accomplishments, military record, and financial assets.[1] The two men contemplated joint business ventures, and in late August, Mermis transferred $27,000 *1046 worth of ski-tuning equipment to Johnson in exchange for computer equipment and $10,000 cash. Johnson also engaged Mermis to refit Johnson's yacht.
Johnson owned a Dodge Viper automobile. On September 6, 1995, Mermis overheard a telephone conversation in which Johnson was negotiating to have a dealer sell the Viper for $55,000. Mermis suggested that Johnson save the cost of the commission by selling the car directly to Mermis for $55,000. Johnson agreed. He informed his wife that he had sold the car to Mermis, and told her to give the keys to Mermis because Mermis "wanted to drive it."[2] Mermis had continuous possession of the car thereafter. Johnson did not immediately demand payment, "[b]ecause Mr. Mermis and I were seeing each other on a daily basis. I had no reason to believe that he wasn't going to pay me."[3]
On September 26, Mermis came to Johnson's home and said he needed the title to the Viper in order to get license plates for it. He promised to "stop by his apartment and pick up his checkbook and bring [Johnson] a check for $55,000."[4] Mermis knew he did not have such funds on hand. Johnson signed over the title and a bill of sale prepared by Mermis showing the sale took place that day.
Mermis did not return with a check. Johnson and Mermis met or spoke several times after the 26th, but Mermis never paid Johnson. In early October, Johnson confronted Mermis and demanded either the money or the car. Mermis drove off without paying for, or returning, the Viper.
On September 18, 1998, the State filed an information alleging that on or about September 26, 1995, Mermis committed first degree theft of the car by deception and by exerting unauthorized control.[5]
Mermis moved to dismiss, arguing that the actions giving rise to the charge occurred on or before September 10, 1995 and were therefore barred by the statute of limitations. The State responded that the crime was not complete until September 26 when Mermis obtained the title. The judge denied the motion to dismiss, with the caveat that she lacked sufficient information to make a final determination on the statute of limitations question. The case proceeded to trial. The jury was not instructed as to any statute of limitations issues. The jury returned a general verdict finding Mermis guilty of first degree theft.
Before sentencing, Mermis moved to arrest judgment on several grounds, including the statute of limitations. The court granted the motion on the grounds that under the Uniform Commercial Code, title to the car passed to Mermis when the car was delivered to him on September 6, 1995, and therefore the crime occurred on that date and prosecution was barred by the statute of limitations.
The State appeals. Mermis cross-appeals, alleging ineffective assistance of counsel, insufficient evidence of theft by unauthorized control, and prosecutorial misconduct.

DISCUSSION
Mermis was charged with theft of the Viper by two alternative means: obtaining control by deception, or exerting unauthorized control.[6] Because the statute of limitations for theft is three years[7] and the State did not charge Mermis until September 18, 1998, we must decide whether he committed either one of these crimes after September 18, 1995.
The State contends the trial court misunderstood and misapplied the Uniform Commercial *1047 Code (UCC) by using rules that apply to the sale of goods to determine when Mermis committed theft. Mermis, on the other hand, maintains that this case is a civil collection action in the guise of a criminal prosecution, and amounts to prosecution for the mere failure to pay a debt in violation of section 17, article I of the Washington Constitution.[8] His first argument is that he bought the car, and cannot be charged with stealing his own car. Alternatively, he argues that if he obtained control by deception, he did so on September 6, 1995, and prosecution is barred by the statute of limitations. As to theft by unauthorized control, he argues that he bought the car and cannot be charged with unauthorized control over his own car, and alternatively, that since he obtained control with Johnson's consent, his control was never unauthorized.

Theft by Deception
Theft by deception occurs when one obtains control of the property of another by color or aid of deception.[9] Mermis obtained control of the car when Johnson gave him the keys on September 6, 1995. Certainly there is evidence that he obtained control by deception, since the entire relationship was based upon deception and Mermis never had the money to purchase the car. All the elements of the crime of theft by deception were thus allegedly present on September 6, 1995. If the crime was complete on that date, its prosecution is barred by the statute of limitations, because the State did not file its information until September 18, 1998.
The State relies, however, on the doctrine of continuing criminal impulse. The State argues that the crime of theft by deception was not complete until Mermis' criminal impulse terminated on September 26, when he used deception to persuade Johnson to sign the title and bill of sale.[10] The State relies particularly upon State v. Carrier.[11] There, the defendant was charged with welfare fraud consisting of successive takings over the course of five years, which the State aggregated and charged as theft in the first degree. The Carrier court held the statute of limitations did not preclude prosecution for takings that occurred more than three years before the charging date, because "`where the successive takings are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive takings constitute a single larceny regardless of the time which may elapse between each taking.'"[12]
Most continuing criminal impulse cases have involved aggregating multiple small takings from a single victim into one (higher degree) charge.[13] The aggregation principle has been incorporated into the Washington theft statutes.[14] Mermis thus argues that application of the doctrine is limited to such cases. But the continuing criminal impulse doctrine originated in the common law,[15] and logically, there is no reason to limit the doctrine to aggregation cases.
The question is whether the successive takingshere, first of the car and then *1048 of the title certificate and bill of sale"are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan[.]"[16] If the impulse continues, the crime is not complete until the continuing impulse has been terminated.[17] Until the crime is complete, the statute of limitations does not begin to run.[18] Whether a criminal impulse continues into the statute of limitations period is a question of fact for the jury.[19] If Mermis' act in persuading Johnson to sign the title and bill of sale on September 26 was part of a criminal impulse to steal the car by deception, prosecution for theft by deception was not barred by the statute of limitations.
Mermis objects that if the continuing impulse doctrine applies, his trial counsel was ineffective in failing to except to the court's failure to give his proposed instructions on the statute of limitations. We agree that the jury should have been instructed on this issue, but not for the reasons or in the way Mermis suggests.
Mermis' proposed instructions focused on the time the car was "conveyed" to him.[20] Mermis insists that the car was conveyed to him on September 6, and that title passed to him at that moment because under Washington's Uniform Commercial Code, when a seller delivers goods to a buyer, title to the goods transfers to the buyer.[21] Without citation to authority, Mermis insists that title passes under this section "even if the sale was induced by fraud or deception."[22] According to Mermis, when Johnson gave him the keys to the car on September 6, he did so as a seller delivering goods, and thus title to the car passed to Mermis. From this, Mermis implies that at the moment of delivery, the crime was necessarily complete, so that its prosecution is barred by the statute of limitations.
This argument is far wide of the mark. As we discuss in the next section of our opinion, whatever title may be obtained by means of theft, it is inferior to that of the true owner. The question here, however, is whether Mermis stole the car by deceiving Johnson, and if so, when the crime was complete. The time of conveyance is irrelevant, as were Mermis' proposed instructions.
The evidence would permit a jury to find that Mermis had a continuing criminal impulse such that the crime of theft by deception was not complete until September 26, 1995, which was within three years of the charge.

Theft by Unauthorized Control
A person commits theft when he exerts unauthorized control over the property of another.[23] Property of another is property *1049 "in which another person has an interest, and the defendant may not lawfully exert control over the item absent the permission of that other person."[24] Once again, the crux of Mermis' theory is the premise that he obtained title to the car when he took "delivery" on September 6. Mermis thus argues the car was not the "property of another" thereafter, and he could not be charged with exercising unauthorized control after September 18, 1995.
The difference between theft and breach of contract or failure to pay a debt is criminal intent.[25] Mermis seeks shelter in the rules that apply to buyers and sellers of goods. But a thief is not a buyer, and Mermis' argument glosses over key aspects of both the UCC and the criminal law. Generally, a thief takes no title whatsoever to stolen goods.[26] When a thief takes "delivery" of goods by deception, he acquires at best voidable title.[27] Such a thief may pass good title to a good faith purchaser under the voidable title doctrine, but the thief has no title superior to that of the true owner.[28]
Voidable title exists when a transaction would be subject to avoidance by the original parties under common law.[29] Washington has long adhered to the principle that fraud will vitiate any contract.[30] Title obtained by fraud is thus voidable. Although a wrongdoer may pass good title to a good faith buyer, the true owner is entitled to rescind and recover the goods so long as they are still in the hands of the wrongdoer.[31]
*1050 The true owner, therefore, has a right of possession superior to any claim of the wrongdoer. For purposes of the theft statutes, the wrongdoer is in possession of "property of another."
Finally, even where fraud or deception is not an issue, a buyer's right to possession is subordinate to that of the seller if the sale is structured upon an unfulfilled condition, such as payment.[32] A cash seller may reclaim goods from a buyer who fails to pay on demand after the goods have been delivered.[33] Even if Mermis initially intended to buy the car, Johnson had the right to demand its return when Mermis failed to pay for it.
Mermis relies on several Washington cases which, upon examination, either are not helpful at all, or support the State's position. In State v. Gillespie,[34] a borrower applied for a bank loan for money to buy a sailboat, but then used the money for other purposes. Gillespie was found guilty of theft by deception or by exerting unauthorized control. We held that there was evidence to support the conviction for theft by deception. But we held Gillespie could not be guilty of theft by unauthorized control because under the UCC, the transfer of a check vests title in the transferee. Therefore, Gillespie, rather than the bank, had title to the loan proceeds when he received the check, and his control over the funds could not be unauthorized.[35]
Gillespie is not helpful here. Gillespie involved the negotiable instrument rules of Article 3 rather than the sales rules of Article 2 of the UCC. Further, Gillespie had already dispensed the funds to a third party; the bank was not claiming an interest in the actual funds and had not demanded their return. While the Gillespie court noted that title is voidable where a wrongdoer obtains property by fraud,[36] the court had no need to explore the voidable title doctrine.
The court did explore the doctrine in Heinrich v. Titus-Will,[37] but that case is not helpful to Mermis either, because there the court considered only the rights of third parties, not the rights of the original owner vis-à-vis the wrongdoer.
Mermis also relies upon State v. Joy,[38] which involved a contractor who took funds as advances for remodeling jobs, then neither did the work nor returned the money. In considering Joy's conviction for exerting unauthorized control over the funds, the Supreme Court held that one who appropriates property of another to his own use, contrary to the terms of the owner's consent, exercises unauthorized control.[39] Mermis asserts *1051 his case is similar in that there were no limitations upon Johnson's consent to his possession of the car, and there could thus be no unauthorized control. But under the rules just discussed, Johnson retained an interest in the car, and had a right to demand its return.[40]
Finally, Mermis relies upon State v. Pike.[41] Pike retrieved his car from a repair shop without paying for the repairs. The Supreme Court reversed Pike's conviction for theft, holding that because the State failed to prove the mechanic had taken the steps necessary to create a statutory lien, which would give the mechanic a possessory interest superior to Pike's, the State had failed to prove the car was "property of another" when Pike drove it away. But under Mermis' theory, Johnson is a seller, not a mechanic; whether a seller retains a possessory interest does not depend upon satisfaction of the lien statutes.
In sum, Mermis had at best voidable title, and Johnson retained a possessory interest superior to Mermis'. The evidence would have allowed the jury to find that Mermis initially obtained control of the car by deception, and/or that he breached his promise to pay. In either case, his interest was inferior to Johnson's, and Johnson had the right to demand return of the car. If Johnson made such a demand after September 18 and Mermis thereafter exerted control with the requisite criminal intent, Mermis committed theft by exertion of unauthorized control within three years of the charge.

Conclusion
The trial court erred in determining that the crime was committed on September 6, 1995 when Mermis obtained possession of the car. Evidence before the jury would support a finding of theft by deception completed on September 26, and/or theft by unauthorized control thereafter. Either finding renders prosecution timely.
We do not, however, reinstate the jury's verdict, because we cannot be sure of its basis. The jury may have found only that Mermis committed theft by deception on September 6, 1995a time beyond the statute of limitations. Neither the instructions nor the general verdict form permit us to determine whether the jury convicted Mermis of a crime committed within the available charging period. We must remand for retrial.[42]

Cross Appeal Issues
Mermis argues that his out-of-state counsel was ineffective because he failed to except to the court's failure to instruct the jury on his statute of limitations defense. The attorney stated in an affidavit that he was unfamiliar with Washington case law and statutes and did not believe the statute of limitations defense was viable, and so did not except to the failure to give his proposed instructions. The State argues that Mermis' counsel preferred to rely on Mermis' absolute denial, and chose to avoid presenting the alternative argument that "if he did it, he did it before September 18."[43] Because of our resolution of the State's appeal, we need not resolve this question.
Mermis also argues that there was insufficient evidence of the alternative means of committing theft by exerting unauthorized control, and that because the jury may have based its determination on this ground, retrial is necessary if we conclude the theft by deception charge is not time-barred. As discussed at length above, we do not agree that there was insufficient evidence of unauthorized *1052 control. We do agree that retrial is necessary.
Finally, Mermis complains that the prosecutor misstated the law by arguing to the jury that because Mermis never intended to pay for the car, the car belonged to Johnson. To the contrary, the prosecutor's argument was a correct interpretation of the law in Washington.
We reverse the arrest of judgment and remand for further proceedings consistent with this opinion.
GROSSE, J., and KENNEDY, J., concur.
NOTES
[1] Among other claims, Mermis stated that he had been married to a federal judge in Oregon, that he was a pilot for United Airlines, that he was a founder of Bayliner Corporation, that he collected expensive cars, and that he owned a ship in England he planned to use as a venture cruise ship and was refurbishing with five million of his own funds.
[2] Report of Proceedings (RP) (Apr. 15, 1999) at 117.
[3] RP (Apr. 15, 1999) at 119.
[4] RP (Apr. 15, 1999) at 152.
[5] The information charged that Mermis, "on or about September 26, 1995, with intent to deprive another of property, to-wit: a Dodge Viper having a value in excess of $1,500, did obtain control over such property belonging to Terry Johnson by color and aid of deception, and, did exert unauthorized control over such property[.]" Clerk's Papers at 1.
[6] Theft occurs when, with intent to deprive another of his property, one wrongfully obtains or exerts unauthorized control over the property of another, or obtains control of such property by color or aid of deception. RCW 9A.56.020.
[7] RCW 9A.04.080(1)(g).
[8] "There shall be no imprisonment for debt, except in cases of absconding debtors." Wash. Const, art. I, § 17.
[9] "`By color or aid of deception' means that the deception operated to bring about the obtaining of the property or services; it is not necessary that deception be the sole means of obtaining the property or services [.]" RCW 9A.56.010(4).
[10] In addition to its usual meaning, "obtains control over" includes actions taken to bring about a transfer of a legally recognized interest in property. See RCW 9A.56.010(8)(a). This is what Mermis allegedly did when he obtained the title documents on September 26. The State has not, however, pursued that theory.
[11] 36 Wash.App. 755, 677 P.2d 768 (1984).
[12] Carrier, 36 Wash.App. at 757, 677 P.2d 768 (quoting State v. Vining, 2 Wash.App. 802, 808-09, 472 P.2d 564 (1970)).
[13] See, e.g., Carrier, 36 Wash.App. at 757, 677 P.2d 768; State v. Reid, 74 Wash.App. 281, 290, 872 P.2d 1135 (1994) (series of thefts from victim aggregated to permit charging first degree theft); Vining, 2 Wash.App. at 808-09, 472 P.2d 564 (successive takings from grocery store constitutes single larceny when pursuant to execution of general larcenous scheme or plan).
[14] See RCW 9A.56.010(18)(c).
[15] See Vining, 2 Wash.App. at 809, 472 P.2d 564; State v. Ray, 62 Wash. 582, 114 P. 439 (1911); State v. Dix, 33 Wash. 405, 74 P. 570 (1903).
[16] Vining, 2 Wash.App. at 808, 472 P.2d 564.
[17] Carrier, 36 Wash.App. at 758, 677 P.2d 768; Vining, 2 Wash.App. at 808-09, 472 P.2d 564; Reid, 74 Wash.App. at 290, 872 P.2d 1135.
[18] Reid, 74 Wash.App. at 290, 872 P.2d 1135; Carrier, 36 Wash.App. at 758, 677 P.2d 768.
[19] Reid, 74 Wash.App. at 290-91, 872 P.2d 1135; Vining, 2 Wash.App. at 808-09, 472 P.2d 564. Continuing criminal impulse is to be distinguished from continuing course of conduct for jury unanimity analysis. See State v. Garman, 100 Wash.App. 307, 311, 984 P.2d 453 (1999), review denied, 11 P.3d 826 (2000).
[20] Mermis proposed three unnumbered instructions on this issue: "The prosecution for the crime of Theft in the First Degree must be commenced within three years after the commission of the crime." Clerk's Papers at 313. "Under Washington law, the execution of title documents to an automobile is merely prima facia evidence of a conveyance and can be rebutted by other factors, including the transfer of physical possession of the subject vehicle to the defendant." Clerk's Papers at 315 (emphasis added). "If you find that the subject vehicle was conveyed to the defendant prior to September 18, 1995, you must find the defendant not guilty of the crime of Theft in the First Degree." Clerk's Papers at 317. The instructions proposed by Mermis offered the jury no definition of conveyance, and no means of determining when a conveyance occurs.
[21] "Unless otherwise explicitly agreed[,] title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods[.]" RCW 62A.2-401(2).
[22] Respondent's Brief at 22.
[23] "Exerts unauthorized control" means:

(a) To take the property or services of another;
(b) Having any property or services in one's possession, custody or control as ... [a] person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto[.]
RCW 9A.56.010(19).
[24] State v. Joy, 121 Wash.2d 333, 341, 851 P.2d 654 (1993) (quoting State v. Pike, 118 Wash.2d 585, 590, 826 P.2d 152 (1992)).
[25] See Midland-Guardian Co. v. United Consumers Club, Inc., 499 N.E.2d 792, 797 (Ind.Ct.App. 1986) (mens rea differentiates criminal conversion from innocent breach of contract or failure to pay debt); see also Pike, 118 Wash.2d at 595, 826 P.2d 152 ("Although it is acceptable to imprison for fraud, one cannot be imprisoned merely for failure to pay a debt."); Reid, 74 Wash.App. at 289-90, 872 P.2d 1135 ("One who acts fraudulently, however, may be imprisoned because he or she is punished for the wrong which has been perpetrated, not for the failure to pay."); State v. Mercy, 55 Wash.2d 530, 534, 348 P.2d 978 (1960) (whether violation of a promise to pay is a criminal act or a civil matter depends upon the intent of the promisor; even a mere promise, when made for the purpose of deceiving and with no intention to perform, may constitute fraud).
[26] RCW 10.79.050.
[27] Voidable title is distinct from "valid title," which can be passed freely, and "void title," which cannot be passed to any buyer (regardless of good faith status) because of the nemo dat quod non habet ("he who hath not cannot give") rule. See Menachem Mautner, "The Eternal Triangles of the Law": Toward a Theory of Priorities in Conflicts Involving Remote Parties, 90 MICH. L.REV. 95, 97-98 (1991).
[28] The UCC makes a distinction between theft by deception and theft by taking, such that one who commits theft by deception acquires voidable title, while one who commits theft by taking acquires no title at all. See Met-Al, Inc. v. Hansen Storage Co., 828 F.Supp. 1369, 1379 n. 14 (E.D.Wis.1993) (voidable title not superior to the possessory interest concurrently held by the original owner, who has the right to reassert its interest upon discovery of fraud). Washington did not adopt the provision that embodies that distinction. Compare U.C.C. § 2-403(1) with RCW 62A.2-403(1); see RCWA 62A.2-403, Washington cmt. 1. Our cases nonetheless embrace it, generally recognizing a difference between "outright theft" (theft by trespass) and theft by deception. See RCW 10.79.050; Heinrich v. Titus-Will Sales, Inc., 73 Wash.App. 147, 159, 868 P.2d 169 (1994) (subsequent purchaser acquires no title to stolen goods despite consideration paid or good faith of the later transaction); State v. Gillespie, 41 Wash.App. 640, 644 n. 5, 705 P.2d 808 (1985) (title obtained by deception is voidable title). See also Linn v. Reid, 114 Wash. 609, 196 P. 13 (1921) (title voidable where thief takes by false pretenses).
[29] See Heinrich, 73 Wash.App. at 158, 868 P.2d 169.
[30] Scott v. McGraw, 3 Wash. 675, 679, 29 P. 260 (1892) (sale and delivery of goods procured by fraudulent representations of the purchaser may be avoided by the vendor). See 3A RONALD A. ANDERSON, UNIFORM COMMERCIAL CODE § 2-403:50, at 646 (3d. ed.1995). A title certificate to a motor vehicle may be avoided on the ground of fraud as the UCC preserves the pre-UCC rule as to fraud. Anderson, supra § 2-401:41, at 530 (citing U.C.C. § 1-103).
[31] RCW 62A.2-403(1). See Gillespie, 41 Wash. App. at 644 n. 5, 705 P.2d 808 (discussing negotiable instruments); Creggin Group, Ltd. v. Crown Diversified Industries Corp., 113 Ohio App.3d 853, 682 N.E.2d 692, 696-97 (1996) (goods stolen are not purchased, and true owner's rights are not severed by subsequent sales, but purchaser with voidable title passes good title to good faith purchaser; under Ohio law, consistent with UCC, purchaser acquires voidable title even though delivery procured with criminal intent); Met-Al, Inc., 828 F.Supp. at 1379 n. 14; Rowse v. Platte Valley Livestock, Inc., 604 F.Supp. 1463, 1466 (D.Neb.1985) (after buyer's check was dishonored, original owners had right to recover cattle from buyer, but not from subsequent good faith purchaser).
[32] "Where payment is due and demanded on the delivery to the buyer of goods or documents of title, his right as against the seller to retain or dispose of them is conditional upon his making the payment due." RCW 62A.2-507(2). This provision does not contradict the provision in RCW 62A.2-401(2) that title passes to the buyer at delivery. The preamble to RCW 62A.2-401 makes clear that its rules in no way alter the rights of any party declared elsewhere in Article 2. See U.C.C. § 2-401 cmt.1.,
[33] Anderson, supra note 31, § 2-507:11, at 785. There is no specific time limit for a cash seller to exercise the right of reclamation. The right may be exercised unless excessive delay prejudices the buyer. U.C.C. § 2-507 cmt 3. See Burk v. Emmick, 637 F.2d 1172, 1176 (8th Cir.1980) (as between the seller and the buyer, where a cash seller reclaims goods sold to a breaching buyer, the only limitation imposed upon the seller's right is a reasonableness requirement).
[34] 41 Wash.App. 640, 705 P.2d 808 (1985).
[35] Gillespie, 41 Wash.App. at 644 n. 5, 705 P.2d 808 (citing former RCW 62A.3-202(1) (1965), amended by Laws of 1993, ch. 229, § 23).
[36] Gillespie, 41 Wash.App. at 644 n. 5, 705 P.2d 808.
[37] 73 Wash.App. 147, 162, 868 P.2d 169 (1994).
[38] 121 Wash.2d 333, 851 P.2d 654 (1993).
[39] Joy, 121 Wash.2d at 341, 851 P.2d 654 ("Here, the issue is whether the owners had an interest in the money paid so as to meet the definition of `property of another,' and whether defendant appropriated that property to his own use, contrary to agreements authorizing defendant to hold possession or control the money. If the particular agreement between the owner and defendant restricted the use of the funds to a specific purpose, the owner would have an interest in the money[.]")
[40] Mermis also ignores the plain evidence of his promise to pay, fulfillment of which may have been considered by Johnson to be a limitation upon his consent to Mermis' use of the car.
[41] 118 Wash.2d 585, 826 P.2d 152 (1992).
[42] See State v. Ortega-Martinez, 124 Wash.2d 702, 708, 881 P.2d 231 (1994); Joy, 121 Wash.2d at 345-46, 851 P.2d 654 (where there was insufficient evidence to support a conviction of theft by embezzlement, and it was impossible to tell whether the jury had based its conviction on theft by unauthorized control or theft by deception alternatives, conviction was set aside and new trial ordered limited to theft by deception).
[43] See Appellant's Reply Brief at 22.