259 P.3d 319 (2011)
STATE of Washington, Respondent,
v.
Tyrone D. DASH, Appellant.
No. 64409-2-I.
Court of Appeals of Washington, Division 1.
August 8, 2011.
Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
Ivan Orton, King County Prosecutor's Office, Seattle, WA, for Respondent.
DWYER, C.J.
¶ 1 Reversal is required where the "to-convict" instruction permits the jury to convict the defendant based solely upon acts committed beyond the statutory limitation period. The "to-convict" jury instruction given in Tyrone Dash's trial permitted the jury to convict Dash without finding that he had committed any criminal act within the statutory limitation period. Accordingly, we reverse Dash's conviction and remand for a new trial.

I
¶ 2 Frances Taylor was 88 years old when she met Dash in early 2000. At that time, *320 she owned two apartment buildings and her own home. She had investment accounts worth $300,000, a life insurance policy worth $120,000, and a stamp collection worth $72,000. Taylor had no debt at the time. By March 2005, Taylor's apartment buildings and stamp collection had been sold. Her investment accounts and her life insurance policy had been cashed out. She had $40,000 in credit card debt and multiple mortgages on her home. She was facing eviction in 10 days.
¶ 3 Taylor met Dash through Abel Cordova, a contractor who was performing repairs on Taylor's apartment buildings. At the time, Dash worked for Cordova, performing accounting services. Shortly after meeting Taylor, Dash began to work for her. He initially managed the disbursement of a loan for her apartment building repairs and ensured that the contractors were paid. Dash's involvement in Taylor's affairs gradually evolved into managing her apartment buildings and assisting her with her personal finances. By 2001, Dash was seeing Taylor on an almost daily basis.
¶ 4 Dash was involved with Taylor's business and personal affairs until late in March 2005, when Taylor's friend, Robert Forgrave, learned that Taylor's home was in foreclosure and that Taylor seemed not to know or understand her financial situation. Forgrave found in Taylor's home evidence of at least eight bank accounts, three mortgages, and multiple credit cards owned jointly by Taylor and Dash. Forgrave suspected that Dash had been stealing money from Taylor, and, thus, Forgrave filed a police report. On May 16, 2005, Forgrave brought Taylor to be interviewed at the Seattle Police Department, where Taylor was interviewed by a Seattle police detective and a prosecuting attorney. The interview was video recorded.
¶ 5 On March 20, 2008, more than three years later, the State charged Dash with one count of theft in the first degree, a violation of RCW 9A.56.030(1)(a) and RCW 9A.56.020(1)(a)and (b), alleging that Dash,
during a period of time intervening between January 1, 2000 and March 31, 2005, with intent to deprive another of property... did wrongfully obtain by color or aid of deception and did exert unauthorized control over such property ... belonging to Frances Taylor, through a series of transactions that were pursuant to a common scheme or plan, as part of a continuing criminal impulse and a continuing course of criminal conduct.
Clerk's Papers (CP) at 1. The State additionally alleged two aggravating factors that Dash knew or should have known that Taylor was a particularly vulnerable victim, RCW 9.94A.535(3)(b), and that Dash's crime was a major economic offense, RCW 9.94A.535(3)(d)(i), (ii), (iii), and (iv).
¶ 6 Prior to its deliberations, the jury was instructed that, in order to convict Dash, it must find that he committed the crime of theft in the first degree "during a period of time intervening between January 1, 2000 and March 31, 2005" and that Dash's acts were "part of a common scheme or plan, a continuing course of criminal conduct, and a continuing criminal impulse." CP at 233 (Instruction No. 7).
¶ 7 The jury convicted Dash as charged and answered the special verdicts in the affirmative, determining that Dash had committed a major economic offense against a particularly vulnerable victim.
¶ 8 Dash appeals.

II
¶ 9 Dash contends that reversal of his conviction is required because the "to-convict" instruction given herein permitted the jury to convict him without finding that he had committed any criminal act within the statutory limitation period. We agree.
¶ 10 "A criminal statute of limitations presents a jurisdictional bar to prosecution. It is not merely a limitation upon the remedy, but a `limitation upon the power of the sovereign to act against the accused.'" State v. N.S., 98 Wash.App. 910, 914-15, 991 P.2d 133 (2000) (footnote omitted) (quoting State v. Glover, 25 Wash.App. 58, 61, 604 P.2d 1015 (1979)). Because the criminal statute of limitations creates an absolute bar to prosecution, whether the State was barred by the statute of limitations from prosecuting *321 a crime is an issue that may be raised for the first time on appeal. State v. Novotny, 76 Wash.App. 343, 345 n. 1, 884 P.2d 1336 (1994).
¶ 11 The State charged Dash with theft in the first degree by information filed on March 20, 2008. In the information, the State alleged that Dash, "during a period of time intervening between January 1, 2000 and March 31, 2005," wrongfully obtained and exerted unauthorized control over Taylor's property "through a series of transactions that were pursuant to a common scheme or plan, as part of a continuing criminal impulse and a continuing course of criminal conduct." CP at 1. Similarly, the jury was instructed:
To convict the defendant of the crime of theft in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That during a period of time intervening between January 1, 2000 and March 31, 2005, the defendant:
a. wrongfully obtained or exerted unauthorized control over property of another or the value thereof; or
b. by color or aid of deception, obtained control over property of another or the value thereof; and
(2) That the property exceeded $1500 in value;
(3) That the defendant intended to deprive the other person of the property;
(4) That the defendant's acts were part of a common scheme or plan, a continuing course of criminal conduct, and a continuing criminal impulse; and
(5) That the acts occurred in the State of Washington.
CP at 233 (Instruction No. 7) (emphasis added).
¶ 12 Where "successive takings are the result of a single, continuing criminal impulse or intent and are pursuant to the execution of a general larcenous scheme or plan, such successive takings constitute a single larceny regardless of the time which may elapse between each taking." State v. Vining, 2 Wash.App. 802, 808-09, 472 P.2d 564 (1970). Because a continuing crime is not completed until the criminal impulse is terminated, the statutory limitation period does not commence until that time. State v. Reid, 74 Wash.App. 281, 290, 872 P.2d 1135 (1994). "Whether a criminal impulse continues into the statute of limitations period is a question of fact for the jury." State v. Mermis, 105 Wash.App. 738, 746, 20 P.3d 1044 (2001). See also Goodman v. Goodman, 128 Wash.2d 366, 373, 907 P.2d 290 (1995) ("Whether the statute of limitations bars a suit is a legal question, but the jury must decide the underlying factual questions unless the facts are susceptible [to] but one reasonable interpretation.").
¶ 13 In Mermis, the State charged John Mermis with theft of a Dodge Viper automobile by two alternative meansobtaining control by deception and exerting unauthorized control. 105 Wash.App. at 743, 20 P.3d 1044. On appeal from his conviction, Mermis contended that, if the jury found that he had obtained control of the Viper by deception, such deception occurred more than three years prior to the date on which he was charged, and, thus, prosecution was barred. Mermis, 105 Wash.App. at 744, 20 P.3d 1044. Mermis had first obtained possession of the car on September 6, 1995, when Mermis told the owner of the car, Terry Johnson, that he would purchase it. Mermis, 105 Wash.App. at 741-42, 20 P.3d 1044. Later, on September 26, 1995, Mermis told Johnson that he needed the title to the Viper in order to obtain license plates. Mermis, 105 Wash.App. at 742, 20 P.3d 1044. Johnson gave Mermis the title, but Mermis never paid Johnson for the car. Mermis, 105 Wash.App. at 742, 20 P.3d 1044.
¶ 14 On September 18, 1998, the State filed an information charging Mermis with theft in the first degree. Mermis, 105 Wash.App. at 742, 20 P.3d 1044. Thus, due to the three-year statute of limitations for theft, the prosecution would have been barred had the crime been completed on September 6, 1995, when Mermis first obtained possession of the car. Mermis, 105 Wash.App. at 744, 20 P.3d 1044. However, the State argued on appeal that, pursuant to the doctrine of continuing criminal impulse, the crime was not completed until September 26, 1995, when Mermis *322 obtained the title to the car and, thus, when his criminal impulse terminated. Mermis, 105 Wash.App. at 744, 20 P.3d 1044. At trial, though, the jury had not been asked to determine whether the crime was committed within the statutory limitation period. Mermis, 105 Wash.App. at 741, 20 P.3d 1044. Because the jury did not make a factual finding regarding when the crime was completed, one of the two alternative means of theft theft by deceptionmay have been barred by the statute of limitations. Mermis, 105 Wash.App. at 744-46, 20 P.3d 1044. Thus, this court reversed Mermis's conviction and ordered a new trial. Mermis, 105 Wash.App. at 741, 20 P.3d 1044.
¶ 15 Similarly, here, because the statute of limitations for charging a person with theft is three years, RCW 9A.04.080(h), the State is barred from prosecuting Dash for the conduct herein alleged unless his "criminal impulse" continued until at least March 20, 2005, three years prior to the date on which he was charged. See Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wash.2d 345, 349 n. 2, 111 P.3d 1173 (2005) (stating that the last day of the three-year statutory limitation period relevant therein occurred on the same date three years after the relevant event); see also RCW 1.12.040. The jury was instructed that, in order to convict Dash, it must find that he committed theft "during a period of time intervening between January 1, 2000 and March 31, 2005." CP at 233 (Instruction No. 7) (emphasis added). However, the jury was not instructed that the State must prove beyond a reasonable doubt that Dash committed the crime during that entire period of time. Nor was the jury instructed that, in order to convict Dash, it must find that the continuing criminal impulse extended until at least March 20, 2005. Moreover, in closing argument, the State advised the jury that it could convict Dash, regardless of the specific time during which Dash committed the crime, so long as it found that he had committed the theft sometime between January 1, 2000 and March 31, 2005:
[T]o convict the defendant you have to find that this happened during a period of time between January 1st, 2000, and March 31st, 2005. And this doesn't say that you have to find that the entire time the crime was taking place. What it says is whatever crime you find had to have occurred within that time period. . . . You don't have to find the entire time period. All you have to find is within that time period.

Report of Proceedings (Sept. 29, 2009) at 126 (emphasis added).
¶ 16 Although the jury was instructed that it must find that Dash's acts "were part of a common scheme or plan, a continuing course of criminal conduct, and a continuing criminal impulse," CP at 233 (Instruction No. 7), this instruction does not cure the defect. Rather, the instruction directed the jury to convict Dash if it found that he had committed the crime pursuant to a continuing criminal impulse, even if that criminal impulse terminated prior to March 20, 2005. Because the jury did not make a finding regarding when the alleged continuing criminal impulse terminated, it cannot be determined whether the jury convicted Dash based solely upon acts committed outside of the statutory limitation period. See Mermis, 105 Wash.App. at 744-46, 20 P.3d 1044.[1]
¶ 17 Because we cannot determine whether the jury convicted Dash based upon a continuing criminal impulse that extended into the statutory limitation periodthat is, until at least March 20, 2005we reverse Dash's conviction and remand for a new trial.[2]

*323 III
¶ 18 Because we reverse Dash's conviction based upon the instructional error, we need not resolve the other issues raised on appeal. However, because some of these issues may arise on remand, we briefly address these remaining claims of error in order to assist the trial court.
¶ 19 Dash contends that his Sixth Amendment right to confront the witnesses against him was violated by the introduction at trial of a videotaped interview of Taylor, who was subject to cross-examination neither during the interview nor at trial. We first note that a general objection to the interview in its entirety may not be sufficient to properly apprise the trial court as to the particular statements to which Dash is objecting. Relatedly, such a general objection may not be sufficient to preserve the claim of error for appeal. See Melendez-Diaz v. Massachusetts, ___ U.S. ___, 129 S.Ct. 2527, 2534 n. 3, 174 L.Ed.2d 314 (2009) ("The right to confrontation may, of course, be waived, including by failure to object to the offending evidence; and States may adopt procedural rules governing the exercise of such objections."); accord Bullcoming v. New Mexico, ___ U.S. ___, 131 S.Ct. 2705, 2718, 180 L.Ed.2d 610 (2011) (defendant may "forfeit by silence" confrontation right by noncompliance with state notice-and-demand procedure).
¶ 20 We also note that the State's position regarding the implications of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), may be inaccurate as a result of more recent United States Supreme Court decisions. In Crawford, the Court broadly stated that the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n. 9, 124 S.Ct. 1354. However, the Court has more recently suggested that the proper focus is not on whether the statement is hearsay but, rather, whether the statement is offered "against" the defendant to establish or prove a past event relevant to the criminal prosecution. Bullcoming, 131 S.Ct. at 2714 n. 6 (citing Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)); see also Michigan v. Bryant, ___ U.S. ___, 131 S.Ct. 1143, 1155, 179 L.Ed.2d 93 (2011).
¶ 21 Five years after Crawford, the Supreme Court explained that:
The Sixth Amendment guarantees a defendant the right "to be confronted with the witnesses against him." (Emphasis added.) To the extent the analysts were witnesses (a question resolved above), they certainly provided testimony against petitioner, proving one fact necessary for his convictionthat the substance he possessed was cocaine. The contrast between the text of the Confrontation Clause and the text of the adjacent Compulsory Process Clause confirms this analysis. While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses "against him," the Compulsory Process Clause guarantees a defendant the right to call witnesses "in his favor." U.S. Const., Amend. 6. The text of the Amendment contemplates two classes of witnessesthose against the defendant and those in his favor. The prosecution must produce the former; the defendant may call the latter. Contrary to respondent's assertion, there is not a third category of witnesses, helpful to the prosecution, but somehow immune from confrontation.
Melendez-Diaz, 129 S.Ct. at 2533-34 (footnote omitted). A witness need not directly accuse the defendant of wrongdoing in order to be a witness subject to cross-examination for purposes of the confrontation clause. Melendez-Diaz, 129 S.Ct. at 2533. Here, several of Taylor's utterances, whether directly *324 accusatory or not, were being offered by the State to "prov[e] one fact necessary for his conviction." Melendez-Diaz, 129 S.Ct. at 2533.
¶ 22 This is a fast-evolving area of the law. Whether Bullcoming, Bryant, and Melendez-Diaz signal a departure from the blanket assertion in Crawford's footnote 9 (that if a statement is not offered to prove the truth of the matter asserted it is not hearsay and, thus, is not subject to confrontation) is not yet clear. Numerous cases from the lower courts and several commentators, including one of America's foremost military lawyer-jurists, have pondered the question and its implications. See generally Hon. Jack Nevin, Conviction, Confrontation, and Crawford: Gang Expert Testimony as Testimonial Hearsay, 34 SEATTLE U.L.REV. 857 (2011). We are certain that the parties will more completely litigate these issues, for the benefit of the trial court, on remand.
¶ 23 Dash also contends that the trial court erroneously instructed the jury that it must be unanimous in order to find that the State had failed to prove the charged aggravating factors. Our Supreme Court's decision in State v. Bashaw, 169 Wash.2d 133, 234 P.3d 195 (2010), is controlling. We are confident that the trial court will properly instruct the jury on remand.[3]
¶ 24 Reversed and remanded for a new trial.
We concur: LEACH, A.C.J., and LAU, J.
NOTES
[1] The State contends that this case is distinguishable from Mermis because, here, the jury was instructed that it must find that Dash's acts were a part of a continuing criminal impulse. Even so, due to the inexact language of the instruction as a whole, it is uncertain whether the jury found that any such continuing criminal impulse extended until at least March 20, 2005, such that the prosecution would not be barred by the statute of limitations.
[2] The State contends that this instructional error was harmless because Taylor's incompetence after March 15, 2005 was uncontroverted and because Dash admitted to takings made on March 25, 28, and 29, 2005. However, even if evidence of these facts had been produced at trial, the jury did not necessarily rely upon such evidence in convicting Dash. Rather, the jury was instructed that it could convict Dash if he either (1) wrongfully obtained or exerted unauthorized control over Taylor's property or (2) obtained control of that property by deception. Thus, the jury here may only have found that Dash committed theft by deception. If the jury convicted Dash on this basis alone, the State's assertion that the jury necessarily convicted him based in part on the late March 2005 ATM withdrawals is underminedgiven Taylor's alleged incompetence at that time, the property taken at that time would not have been taken by deception but, rather, by exerting unauthorized control. Moreover, the vast majority of the takings alleged by the State occurred prior to 2005, suggesting that the jury may not have based its decision on the few late March 2005 takings. See Ex. 7 (ATM cash withdrawals); Ex. 8 (credit card charges and payments); Ex. 10 (cash advances on credit cards).
[3] We need not further evaluate the merits of Dash's remaining claims. The wording of appropriate jury instructions on remand is best left to the discretion of the judge presiding over that trial, based upon the evidence presented and the arguments of counsel at that time.

The State moved to supplement the record on appeal. Because the proffered supplements are unnecessary to resolve this appeal, we deny the State's motion.